UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Palm Beach Division
Case No.:

GREG LANDAU; EUGENIA BAUMEL;
BELLA MAR CORPORATION, S.A.;
TED BIELENDA;  DOROTHY BIELENDA;
SEMYON BRAYMEN; ROZA BRAYMEN;CHE BIZ
OCEANIC, LLC; AVI COHEN; VISTA DEL MAR
4912, S.A.; OCEAN VIEW GROUP, CORP.;  MIKHAIL
GISSIN; GOLDEN CLUB OF PANAMA, INC.;
SILVER CLUB, S.A.; MILANDA CORPORATION, S.A.;
 GENE MIRVIS;  ALEX ORLIKOV;
NADEZDA CORPORATION, S.A.; GOODWILL
CORPORATION, S.A.; TROPICAL INVESTMENT GROUP,
 INC.; TOC No. 3606, INC.;NEW HORIZONT INVESTMENTS,
 INC.; PACIFIC INVESTMENTS OPPORTUNITY, S.A.; OCEAN
CLUB 3202, CORP.;SUNSHINE BUSINESS GROUP, S.A.;
ALTROF CORPORATION, S.A.; BOTRAIN CORPORATION,
S.A.; SENYA VAYNER; SAMUIL KIZHNERMAN; DAVID
FELDMAN; ARIE FELDMAN; KLAVDYA FELDMAN;
DAVID SASSON; DONNA SASSON; FARIT KOURAMSHIN;
TOC NO. 3105, INC.,TROPICAL LIFE GROUP, INC.,

                    Plaintiffs,

v.

NEWLAND INTERNATIONAL PROPERTIES, CORP.;
ROGER KHAFIF; THE TRUMP ORGANIZATION;
DONALD TRUMP, individually,

                    Defendants.
_____/

## COMPLAINT

### PARTIES AND JURISDICTION

1. Plaintiff, GREG LANDAU (hereinafter "Landau") or assignee corporation, is an individual who resides in Miami-Dade County, Florida.

2. Plaintiff, EUGENIA BAUMEL or assignee corporation, is an individual who resides in Palm Beach County, Florida.

3. Plaintiff, BELLA MAR CORPORATION, S.A., is a Panamanian corporation, created to take title of Unit #4514.

4. Plaintiff, TED BIELENDA, or assignee corporation, is an individual who resides in the state of New Jersey.

5. Plaintiff, DOROTHY BIELENDA or assignee corporation, is an individual who resides in the state of New Jersey.

6. Plaintiff, SEMYON BRAYMEN or assignee corporation, is an individual who resides in the state of Michigan.

7. Plaintiff, ROZA BRAYMEN or assignee corporation, is an individual who resides in the state of Michigan.

8. Plaintiff, CHE BIZ OCEANIC, LLC., is a Panamanian corporation, created to take title of Units #4005, #5906, #4306, and #4001.

9. Plaintiff, AVI COHEN, or assignee corporation, is an individual who resides in the state of New York.

10. Plaintiff, ARIE FELDMAN, or assignee corporation, is an individual who resides in the state of New York.

11. Plaintiff, DAVID FELDMAN, or assignee corporation, is an individual who resides

in the state of New York.

12.     Plaintiff, KLAVDYA FELDMAN, or assignee corporation, is an individual who resides in the state of New York.

13.     Plaintiff, MIKHAIL GISSIN or assignee corporation, is an individual who resides in the state of Massachusetts.

14.     Plaintiff, OCEAN VIEW GROUP, CORP., is a Panamanian corporation, created to take title of Units #5903 and #4912.

15.     Plaintiff, FARIT KOURAMSHIN or assignee corporation, is an individual who resides in Russia.

16.     Plaintiff, GOLDEN CLUB OF PANAMA, INC., is a Panamanian corporation, created to take title of Unit #3613.

17.     Plaintiff, T.O.C. R01-A, LLC., is a Panamanian corporation, created to take title of Unit #R01-A.

18.     Plaintiff, T.O.C. R01-B, LLC, is a Panamanian corporation, created to take title of Unit #R01-B.

19.     Plaintiff, SILVER CLUB, S.A., is a Panamanian corporation, created to take title of Unit #5705.

20.     Plaintiff, GENE MIRVIS, or assignee corporation, is an individual who resides in Broward County, Florida.

21.     Plaintiff, MILANDA CORPORATION, S.A., is a Panamanian corporation, created to take title of Unit #4501.

22.     Plaintiff, ALEX ORLIKOV, or assignee corporation, is an individual who resides in the state of New York.

23. Plaintiff, DAVID SASSON or assignee corporation, is an individual who resides in the state of New Jersey.

24. Plaintiff, DONNA SASSON or assignee corporation, is an individual who resides in the state of New Jersey.

25. Plaintiff, NADEZDA CORPORATION, S.A., is a Panamanian corporation, created to take title of Unit #4311.

26. Plaintiff, GOODWILL CORPORATION, S.A., is a Panamanian corporation, created to take title of Unit #5809.

27. Plaintiff, TROPICAL INVESTMENT GROUP, INC., is a Panamanian corporation, created to take title of Unit # 3104.

28. Plaintiff, NEW HORIZONT INVESTMENTS, INC., is a Panamanian corporation, created to take title of Unit #4607.

29. Plaintiff, PACIFIC INVESTMENTS OPPORTUNITY, S.A., is a Panamanian corporation, created to take title of Unit #3904.

30. Plaintiff, OCEAN CLUB 3202, CORP., is a Panamanian corporation, created to take title of Unit #3202.

31. Plaintiff, TOC NO. 3606, INC; is a Panamanian corporation, created to take title of Unit #3606.

32. Plaintiff, TOC NO. 3105, INC., is a Panamanian corporation, created to take title of Unit #3105.

33. Plaintiff, SUNSHINE BUSINESS GROUP, S.A., is a Panamanian corporation, created to take title of Unit #4415.

34. Plaintiff, BOTRAIN CORPORATION, S.A., is a Panamanian corporation, created

to take title of Unit #5111.

35.    Plaintiff, ALTROF CORPORATION, S.A., is a Panamanian corporation, created to take title of Unit #4406.

36.    Plaintiff, TROPICAL LIFE GROUP, INC., is a Panamanian corporation, created to take title of Unit #5803.

37.    Plaintiff, SENYA VAYNER, or assignee corporation, is an individual who resides in the state of New York.

38.    Plaintiff, SAMUIL KIZHNERMAN or assignee corporation, is an individual who resides in the state of New York.

39.    Defendant, NEWLAND INTERNATIONAL PROPERTIES CORP. (hereinafter "Newland International" or "Newland International Properties") is a Corporation incorporated under the laws of the Republic of Panama which transacted business in South Florida and is otherwise *sui juris*.

40.    Defendant, the TRUMP ORGANIZATION (hereinafter "the Trump organization") is a business entity located in New York ,New York but which at all times material here is what I will to transacted business in South Florida and is otherwise *sui juris*.

41.    Defendant, DONALD TRUMP (hereinafter "Donald Trump" or "Trump") is a resident of the state of New York but who has participated in activities in the state of Florida and is otherwise *sui juris*.

42.    Defendant, ROGER KHAFIF (hereinafter "Khafif") is a resident of Florida and is otherwise *sui juris*.

43.    Jurisdiction to this Court is invoked pursuant to, 15 U.S.C § 1701 et seq., 15 U.S.C. § 77(e), 18 USC §1965 (a). Venue is based on 18 USC §1965 (a).

## GENERAL ALLEGATIONS

44. On or about July or August, 2006, Khafif approached Landau with an investment opportunity.

45. The investment opportunity involved the development of a residential and hotel high-rise in Panama City, Panama together with an affiliated Beach club located on the exclusive island of Contadora.

46. The opportunity, as presented by Khafif was that he and the Trump Organization were building a residential and hotel condominium and affiliated Beach club, that the investment would require a 30% down payment towards the purchase price of the unit, that the developer and/or the Trump Organization would provide financing of 70% to investors, that investors who purchased two units could resell one unit before they were required to close at a profit substantial enough to fully fund their second purchase, that investors who purchased a hotel condominium unit would make substantial profits on their investment through the developers rental program and that purchasers of a residential unit could resell their unit at a substantial profit prior to being required to close or at any time after closing at a substantial profit.

47. The Beach club, of which each investor would be a member, was to be located on the exclusive island of Contadora.

48. In particular, Khafif represented that if an investor put down 30% Newland international properties and/or the Trump Organization would manage the investment, provide financing for the remaining 70%, and arrange new buyers to purchase the units before closing was required.

49. Khafif also told Landau that the units were selling quickly and that Landau and

other investors who contracted to purchase units would be the first units sold to new buyers, that Newland International would line up new buyers for Landau's and his fellow investors property before construction of their unit was completed-netting substantial returns.

50. These representations were made to Landau with the understanding and expectation that Landau would repeat them to other potential investors.

51. The Trump Organization knew these representations were being made by Khafif to Landau and of the fact that Landau was expected to repeat them to other potential investors.

52. Khafif and Landau traveled to Moscow Russia on or about October, 2006 to make a presentation to potential investors there. At that time, Khafif repeated to these Russian investors all of the above representations regarding the investment opportunity and Newland International and the Trump Organization.

53. Khafif and the Trump Organization arranged for an investor meeting to take place in Florida on or about Apri, 2007 at a Trump property, Mara Lago in Palm Beach County, Florida. All of the plaintiffs were invited to attend this investor meeting. All plaintiffs or their designated representative attended this meeting in Florida.

54. At the Florida investor presentation Khafif repeated all of the above representations to all of the attendees. Donald Trump was present and heard these representations including the representation that the Trump Organization would provide 70% financing for all investors. Donald Trump did not correct or negate any of these representations.

55. At the Mara Lago meeting and in the Moscow presentation it was stated that the

Trump organization would manage the casino on the property, which would be branded a "Trump Casino," thereby increasing its value and marketability.

56. Plaintiffs reasonably relied upon all of the above representations.

57. These representations were knowingly false when made.

58. In reasonable reliance on the representations listed above the plaintiffs agreed to invest and signed "contracts for a promise of sale" with Newland International Properties. All of the contracts are attached hereto as exhibits 1 through 40.

59. Each purchaser paid Newland International 30% of their respective purchase prices pursuant to the investment scheme.

60. In the summer of 2010 representatives of Newland advised plaintiffs that Newland and The Trump Organization were no longer providing 70% financing for investors.

61. In the summer of 2010 it became known to the investors that the Beach Club was no longer being constructed on Contadora Island but rather, was being constructed on Isla Saboga, a lesser island, thereby diminishing the quality and value of each plaintiff's investment.

62. In the summer of 2010 it became known that the model representations of various units were false. The unit sizes and configurations were smaller than initially represented. However, no plaintiff was advised of this change in size and given an opportunity to cancel their contract.

63. In the fall of 2010 it became known that the Trump organization is not going to brand or manage the casino as previously represented.

64. While the contracts for a promise of sale are with Newland International,

literature provided by the developer indicates that Donald Trump is also the developer. Specifically, in promotional literature Donald Trump represents, "I am pleased to introduce Trump Ocean Club, an exciting and exclusive property located in Punta Pacifica, the most distinguished an (sic) renowned sector in the city of Panama. I am honored to develop this extraordinary high-rise with my partner Roger Khafif of the K Group. Together we are proud that our creation has already become a landmark in Latin America and the Caribbean." Indeed, Khafif represented to Landau, to the investors in Moscow, and to the investors at the Mara Lago meeting that Donald Trump and the Trump Organization were his partners.

65. All conditions precedent for the filing of this action have been satisfied, waved, excused or performance would be futile.

66. Plaintiffs have been required to hire the undersigned counsel and have thereby obligated themselves to pay the undersigned counsel reasonable attorneys fees, and have incurred litigation costs.

## COUNT I
### Violation of 15 U.S.C. § 77(e)

67. Plaintiff, Landau, reasserts and realleges paragraphs 1 through 66 as if fully set forth herein.

68. Defendants, Newland International is a "seller" within the meaning of 15 U.S.C. § 77(e) because Newland International solicited plaintiff's purchase of the subject real estate investment opportunities.

69. The funds paid by plaintiff pursuant to the contracts for a promise of sale were pooled by Newland International with the funds of other investors in the project in an effort by Newland International to secure a profit for itself and the investors. As a result,

the investors, including plaintiff, shared in the risks and benefits of the investment scheme.

70. Plaintiff and the other investors relied on, and were dependent upon, the expertise and efforts of Newland International for their investment returns.

71. Plaintiff and the other investors were told by Newland International, and expected, that the promised profits would come solely from the effort of Newland International.

72. The contract(s) for a promise of sale (attached hereto as exhibit 1-3) constitute a(n) investment contract(s) which was/were offered for sale within United States, in interstate commerce, and are therefore subject to the federal securities law, including the registration requirements.

73. No registration statement was filed or in effect with the Securities and Exchange Commission and no exemption from registration exists with respect to the investment contracts described in this complaint rendering the contracts subject to rescission.

WHEREFORE, Plaintiff prays for judgment against Newland for rescission of the contract(s) and return of all monies paid to Newland, any and all additional damages recoverable under law, including but not limited to, compensatory damages, incidental and consequential damages, attorneys fees, costs, interest, and such other and further relief as this court may deem just and proper.

## COUNT II
### Control Personal Liability

74. Plaintiff, Landau, reasserts and realleges paragraphs 1 through 66 as if fully set forth herein.

75. Defendants, Newland International Properties, the Trump Organization, Roger

Khaif and Donald Trump have directly or indirectly violated 15 U.S.C. § 77(e) in connection with Plaintiff's purchase agreements (attached hereto as Exhibits 1-3)

76. Khafif as president and shareholder of Newland International Properties had the managerial power to control or influence the policy and decision-making process of Newland international properties.

77. Donald Trump, as a contract partner with Khafif and as a well recognized developer had the ability to influence directly or indirectly the policy and decision-making process of Newland International Properties.

78. The Trump Organization, through Donald Trump, had the ability to influence directly or indirectly the policy and decision making process of Newland International Properties.

79. Khafif made the alleged misrepresentations on behalf of Newland International Properties.

80. Donald Trump stood by silently as Khafif made the misrepresentations. Trump knew of the misrepresentations and recklessly disregarded those representations made by Khafif.

81. Defendants, Khafif, Donald Trump, and the Trump Organization were culpable participants in the fraudulent scheme described herein and caused or allowed Newland International Properties to engage in the acts and omissions which give rise to liability under 15 U.S.C. § 77(e).

82. Accordingly, Defendants, Khafif , the Trump Organizaton and Donald Trump, are controlling persons of Newland International Properties within the meaning of section 15 (a) of the Exchange Act, 15 U.S.C. § 77(o).

Wherefore, Plaintiffs pray for judgment against Defendants, Khafif, Donald Trump, and the Trump Organization for any and all damages recoverable under law, including but not limited to compensatory damages, incidental and consequential damages, attorney's fees, costs, prejudgment interest, and such other and further relief as this Court deems appropriate.

## COUNT III
### Violation of 18 USC §1961-1968

83. Plaintiff, Landau, reasserts and realleges paragraphs 1 through 66 as if fully set forth herein.

84. Defendants, Newland International, The Trump Organization, Roger Khafif, and Donald Trump executed this scheme and artifice to defraud by causing matters to be mailed and delivered by the U.S. Postal Service and by causing sounds to be transmitted by means of wire communications in interstate and foreign commerce in connection with Plaintiff's purchase agreement(s) (attached hereto as Exhibits 1-3)

85. Defendants committed, among others, the following acts of mail fraud, indictable under 18 U.S.C. § 1341 and wire fraud, indictable under 18 U.S.C. § 1341 each of which constituted "racketeering activity" within the meaning of 18 USC § 196 (1) and all of which collectively constituted part of a "pattern of racketeering activity" within the meaning of 18 USC § 1961(5).

86. Specifically, Newland caused false and misleading advertising to be mailed to the Plaintiffs herein. The mailings affected interstate and foreign commerce. The mailings took place from late 2006 through the present.

87. The first known mailing took place prior to the Moscow trip. Khafif caused brochures to be placed in the US mail in Florida for delivery to Russia on or about

September 2006.

88.     While the mailings were misleading promotional materials placed in the mails by Newland International, the Defendants Roger Khafif, the Trump Organization, and Donald Trump all intentionally participated in the scheme to defraud the Plaintiffs of money by use of the mail.

89.     Khafif's participation involved the drafting of the misleading and fraudulent promotional materials and the direction to Newland to place the materials in the mail.

90.     The Trump Organization's participation involved the approval of the promotional materials despite its knowledge of their falsity.

91.     Donald Trump's participation involved the provision of false and misleading text to include in the promotional materials. The mailing of the promotional materials constituted criminal conduct by reason of the fact that the materials contained falsities and were placed in the mail which affected interstate and foreign commerce.

92.     Plaintiff relied upon the fraudulent misrepresentations contained within the promotional materials placed in the mail by Defendants.

93.     The Plaintiff's reliance upon these misrepresentations was reasonable.

94.     As a result of this reasonable reliance, Plaintiff has suffered damage in the amount of its 30% deposits.

95.     The Defendants engaged in wire fraud in connection with their fraudulent scheme by engaging in interstate telephone conversations to enable their scheme. Defendants also participated in calls between Panama and the United States in furtherance of their scheme to defraud. Specifically, Khafif called Landau in late 2006 and made fraudulent misrepresentations of fact as detailed in paragraphs 46 through 49, and 55, in

furtherance of a racketeering enterprise. It was expected and requested that Landau repeat these misrepresentations to the other Plaintiffs. Landau did not know of their falsity.

96. Another known use of the wires involved Khafif calling at least one potential investor in Florida from Panama. Potential investor Mark Gelfand and Khafif used the wires to negotiate a potential investment. This use of the wires was prior to the Moscow presentation in October 2006.

97. In 2009 Khafif used the wires to communicate with Landau concerning his potential investment in the Trump Casino.

98. Additional acts of mail and wire fraud include Newland International's repeated contacts with plaintiffs in furtherance of their transfer of funds to Newland International on the false promises that plaintiff would realize a significant return on their investments.

99. The Defendants collectively constituted an "enterprise" within the meaning of 18 U.S.C. § 1961(4).  The enterprise arguably was and is Newland International, alternatively, the four defendants constitute the enterprise.  All Defendants are direct participants in the affairs of the enterprise.

100. Newland was a direct participant in the affairs of the enterprise and arguably was the enterprise in which all other Defendants participated.

101. The Trump Organization was a direct participant in the affairs of the enterprise because The Trump Organization reviewed and approved the marketing materials even though it knew that the representations were false.

102. Donald Trump personally provided false information to be included in the marketing materials including but not limited to the false information detailed in

paragraph 64.

103. Khafif actively directed the actions of Newland International. All Defendants received income directly from the pattern of racketeering activity and used the income or its proceeds to operate the enterprise in violation of 18 U.S.C. § 1962(a).

104. Defendant, Newland, is a "person" within the meaning of 18 USC § 1961(3).

105. Defendant, Khafif, is a "person" within the meaning of 18 USC § 1961(3).

106. Defendant, The Trump Organization is a "person" within the meaning of 18 USC § 1961(3).

107. Defendant, Donald Trump, is a "person" within the meaning of 18 USC §1961(3).

108. The enterprise and the pattern of racketeering activity directly affected interstate and foreign commerce.

109. Defendant, Trump, The Trump Organization, Khafif, and Newland each conspired with the other to violate the provisions of 18 U.S.C § 1962(a) and that conspiracy by Defendants violated 18 U.S.C § 1962(d).

110. As a result of Defendants violation of RICO, Plaintiff has been damaged in the amount of its 30% deposits paid, interest thereon, cost, attorneys fees, and such other and further relief as this Court deems appropriate.

Wherefore, Plaintiffs pray for judgment against Defendants, Newland International, Khafif, Donald Trump, and the Trump Organization for any and all damages recoverable under law, including but not limited to compensatory damages, incidental and consequential damages, attorney's fees, costs, prejudgment interest, and such other and further relief as this Court deems appropriate.