FROM - Greg Landau

(10 pgs)

LSG Copy

1

# CONTRACT FOR A PROMISE OF SALE
## Trump Ocean Club
### (Condominium-Unit)

Between the undersigned, to wit: **ROGER KHAFIF**, acting in his condition as President and empowered attorney of **NEWLAND INTERNATIONAL PROPERTIES CORP.** (herein the "Developer"), a corporation incorporated under the laws of the Republic of Panama, recorded in Card 521258, Document Redy 929232 of the Mercantile Public Register of Panama, hereinafter called **THE PROMISSOR SELLER** on one part; and  Greg Landau and or Corporation to be formed _____, a American _____ citizen with Passport Number _____, acting on behalf of _____ a corporation incorporated under the laws of the Republic of Panama, registered at Microjacket _____, Document _____of the mercantile section of the public registry of Panama, hereinafter called the **PROMISSOR BUYER**, have agreed to enter into this Agreement or Contract for a Promise of Sale, hereinafter the **Promise of Sale**, subject to the following clauses:

**ONE**: The **PROMISSOR SELLER** states that as Developer he has been sufficiently authorized and empowered to enter into this **Promise of Sale** by the Owner of Lot No. 234240, recorded in Document Redy 607870, Province of Panama, Property Section, Public Registry Office of Panama, located in Punta Pacifica, Panama City.

**TWO**: The **PROMISSOR SELLER**, who is also the project Developer, states that on the Lot mentioned in **Clause One** above he intends to construct a 66 story building with 13 stories and a basement to be destined for parking, and aprox. 869 units for residential use to be divided between residential condominium units and hotel-condominium units. The Developer has been further licensed to name the above mentioned building "**Trump Ocean Club International Hotel & Tower**" hereinafter **The Building,** which shall be subject to the incorporation, by-laws and the rules and regulations of the Condominium Association, hereinafter the **Condominium Regulations**.

**THREE**: The **PROMISSOR SELLER** states that **The Building** will be constructed subject to the guidelines and specifications in the **Trump® License** and in accordance with the architectural design prepared by **Arias, Serna & Saravia S.A.** with participation of the Architect **Edwin Brown**. The Parties understand that the **PROMISSOR SELLER** can modify the architectural design mentioned above, provided that any alterations made do not entail altering the overall setting offered according to the designer's architects' criteria.

**FOUR**: Under this **Promise of Sale** the **PROMISSOR BUYER** agrees to buy lien free, all property and possession rights of the real estate unit of the Condominium, number   3502   of **The Building**, hereinafter called **The Unit**.

(a) The **Unit** will have an approximate area of __192.49__ sq. mtrs. (__2,132__ sq. ft.) and will include a living room / dining room area, kitchen, terrace, __3__ bedrooms and __2.5__ bathrooms.

(b) The **Unit** will be finished as follows: marble floors, divisions will be plastered and painted on both sides, modular kitchens with granite tops, bathrooms with granite tops and marble lining.

(c) Additionally **The Unit** will entitle the **PROMISSOR BUYER** to exclusive use of **one (1)** parking space and the common use of additional parking spaces in **The Building.**

(d) The sale price of **The Unit**, as indicated in **Clause Six** hereof has been agreed to take in consideration **The Unit's** approximate area as indicated in this **Clause Four** hereof. The Parties hereby agree that any increase or reduction in area up to a maximum of five per cent (5%) will result in a proportional and automatic modification of **The Unit's** sale price. Should the area of **The Unit** increase or decrease, such modification will be before construction begins, noticed in a writing by the **PROMISSOR SELLER** to the **PROMISSOR BUYER** who hereby agrees to such modification if it is within a five per cent (5%) limit. The **PROMISSOR BUYER** further accepts the alteration in the price which, in the event of an increase, will be paid by the **PROMISSOR BUYER** together with the last four payments indicated in sections ii), iii) and iv) of paragraph (a) of **Clause Six** hereof.

(e) If the increase or reduction in the area of **The Unit** is greater than five percent (5%), the price will be modified in a manner proportional thereto, notwithstanding which the **PROMISSOR BUYER** may terminate this **Promise of Sale** and the Parties hereby agree that any present or future dispute before any authority concerning their obligations included in this **Promise of Sale** is settled herein and consequently, the **PROMISSOR SELLER** will return the **PROMISSOR BUYER** all sums of money received to date in payment for **The Unit** price, plus a compensation interest equivalent to three per cent (3%) per annum. In the event that the **PROMISSOR BUYER** decides to terminate this **Promise of Sale** as a result of the modification referred to in the preceding sentence, said termination will be notified in writing to the **PROMISSOR SELLER** no later than fifteen (15) calendar days after receiving notice of the alteration in area being greater than five percent (5%). Silence by the **PROMISSOR BUYER** concerning this alteration will be understood as an unmistakable sign and agreement of conformity with the new area and new price.

**FIVE:** In addition to **The Unit** price, the **PROMISSOR BUYER** agrees to purchase and pay the price of a membership, hereinafter called the **Membership**, to use the **Building's** Beach Club. The **Membership** price will be determined according to the following table, based on the number of bedrooms in **The Unit** and payment thereof will be made together with the balance due on **The Unit** price as stated in **CLAUSE SIX**.

3

| Type of Unit | Type of Share | Price ( in US$) |
|---|---|---|
| 1 bedroom | A | 10,000 |
| 2 bedroom | B | 14,000 |
| 3 bedroom | C | 18,000 |

**SIX:** The parties hereby declare that the sale price of **The Unit** is Six Hundred Forty Two Thousand Six Hundred THOUSAND U.S. DOLLARS AND 00/100 (US$ 642,600 .00) and that the sale price of the **Membership** is Eighteen THOUSAND U.S. DOLLARS AND 00/100 (US$ 18,000 .00). Together, they add up to Six Hundred Sixty Thousand Six Hundred THOUSAND U.S. DOLLARS AND 00/100 (US$ 660,600 .00).

(a) The **PROMISSOR BUYER** will pay the **PROMISSOR SELLER** this last sum as follows:

i) Sixty Four Thousand Two Hundred Sixty U.S. DOLLARS (US$ 64,260 .00) equal to ten per cent (10%) of the sale price of **The Unit** upon the execution of this **Promise of Sale**, this amount to be deposited in HSBC to the Escrow Account No. 048-160097-092, where it will be kept until no later than the **Date in Which Construction Begins** defined herein as the day in which pile work of the Building begins at which time said sum shall be released to the Developer.

ii) Sixty Four Thousand Two Hundred Sixty U.S. DOLLARS (US$ 64,260 .00) equal to ten per cent (10%) of the sale price of **The Unit**, ten (10) days after notice that the construction of the **Building** has begun on the **Date in Which Construction Begins**.

iii) Sixty Four Thousand Two Hundred Sixty U.S. DOLLARS (US$ 64,260 .00) equal to ten per cent (10%) of the sale price of **The Unit**, divided into two (2) equal installments, each equal to five per cent (5%) of the sale price of **The Unit**, the first installment to be paid one (1) year and the second installment to be paid after two (2) years from the beginning of the construction of the **Building** on the **Date in Which Construction Begins** and;

iv) The balance due on the sale price of **The Unit**, together with the sale price of the **Membership**, which together adds up to Four Hundred Sixty Seven Thousand Eight Hundred Twenty U.S. DOLLARS (US$ 467,820 .00) to be paid to the **PROMISSOR SELLER'S** satisfaction by wire transfer or certified check from a bank accepted by the **PROMISSOR SELLER** no later than on the date of execution of the **Public Deed of Sale,** in the event that the **PROMISSOR BUYER** pays said balance directly without credit or financing from a banking or financial entity; in the event that the **PROMISSOR BUYER** uses a loan to pay the balance stated in this section,

payment will be made when recording the above mentioned **Public Deed of Sale** of **The Unit** in the Public Registry, through a first class bank in Panama, accepted by the **PROMISSOR SELLER** as stated in a Letter of Irrevocable Payment issued by the bank in favor of the **PROMISSOR SELLER** or of the person or legal entity appointed by the **PROMISSOR SELLER**. Presenting said Letter of Irrevocable Payment is a precondition to the execution of the **Public Deed of Sale. PROMISSOR BUYER'S** obligations hereunder are not conditional upon his/her ability to obtain credit or financing.

(b) In the event that the **PROMISSOR BUYER** fails to pay the price according to the amounts, procedures and dates agreed in sections i) through iv) of paragraph (a) of the above, or otherwise fails to perform his/her promises under this **Promise of Sale**, the **PROMISSOR SELLER** may unilaterally and without prior judicial action or representation of any type or kind, determine that the **PROMISSOR BUYER** has unilaterally refrained from buying **The Unit** and has defaulted under this Agreement, in which case the **PROMISSOR SELLER** in its sole discretion will be free to demand full compliance hereof, or to exercise the right to terminate the **Promise of Sale** for cause, which is expressly acknowledged by the Parties. In the latter event, the **PROMISSOR SELLER** may freely and immediately dispose of **The Unit** and the **Membership** hereof, under any title and without any type of restriction.

(c) Should the **PROMISSOR BUYER** fail to fulfill the obligations agreed to herein and the **PROMISSOR SELLER** terminates this **Promise of Sale,** all sums paid by the **PROMISSOR BUYER** as part of the price of **The Unit**, will remain and belong in favor of the **PROMISSOR SELLER** as a liquidated and agreed upon damages and not as a penalty, without any need of any prior judicial action or representation.

<u>**SEVEN**</u>: The **PROMISSOR SELLER** will make **The Unit** available to the **PROMISSOR** BUYER when the following conditions are met:

i) That the corresponding authorities issue the Occupation Permit,

ii) That the **PROMISSOR BUYER** has made every payment referred to in **Clause Six** above and the **Public Deed of Sale** is signed and,

iii) That any balance due on the Price of **The Unit** and the membership is made in cleared funds or when the **Public Deed of Sale** is executed, the **PROMISSOR BUYER** has provided the **PROMISSOR SELLER** with a Letter of Irrevocable Payment issued by a bank accepted by the **PROMISSOR SELLER** to pay said balance due on the price of **The Unit** and the **Membership** effective when the **Public Deed of Sale** is recorded.

(a) The **PROMISSOR BUYER** agrees to pay the **PROMISSOR SELLER** interest equal to a monthly sum of one and one half per cent (1.5%) of the difference resulting from subtracting the amounts effectively paid from the total **Unit** price, thirty (30)

days from the moment the Occupation Permit is issued for the **Building**, to one of the following dates:

    i)    The **Closing** date in which the **Public Deed of Sale** of **The Unit** is signed, in the event that the balance due is paid without a loan from a financial entity; or

    ii)    The date in which the Bank pays the Letter of Irrevocable Payment, in the event that the price is paid with a loan from a financial entity.

    (b)    From the moment in which the Occupation Permit is issued by the corresponding authorities, the **PROMISSOR BUYER** will be solely and exclusively responsible for paying all utilities such as water, electricity, as well as all maintenance costs that are necessary to make good use of the property or required for the Unit and any sum corresponding to monthly expenses or capital expenses established for **The Unit** under the **Condominium Regulations.**

**EIGHT:** According to Panama Law, the execution of the **Public Deed of Sale** is the legal document under which ownership changes hands. Consequently, the **PROMISSOR BUYER** must execute said document after the corresponding authorities have issued the Occupation Permit of the **Building**. Failure to execute the **Public Deed of Sale** by the **PROMISSOR BUYER** after more than ninety (90) calendar days from the date in which the Occupation Permit is issued, is considered to be a serious breach of the obligations agreed to by **PROMISSOR BUYER**.

**NINE:** The contracting parties under this **Promise of Sale** agree that in the event of default by **PROMISSOR BUYER** of any obligation agreed to hereunder, **PROMISSOR SELLER** may freely decide in it sole discretion whether to demand compliance thereof or terminate the **Promise of Sale** without the need for any prior statement or determination by any authority, in which case **PROMISSOR SELLER** shall keep as penalty, all sums paid by the **PROMISSOR BUYER** as part of the price of **The Unit** and may in any event dispose of **The Unit** for its sale.

**TEN**: The **PROMISSOR BUYER** or any legitimate assignee thereof, irrevocably agrees to the following responsibilities and obligations:

    i)    To execute the **Public Deed of Sale** after receiving notice that the Occupation Permit has been issued.

    ii)    To comply with and adjust to the obligations and limitations contained in the **Condominium Regulations** as approved for the **Building** and to pay the monthly administration and maintenance fee established, from the date in which the Occupation Permit is issued.

    iii)    To provide the **PROMISSOR SELLER** with the necessary debt-free certificate and all other documents required for the **Closing** and for recording the **Public Deed of Sale.**

iv) To accept the **PROMISSOR SELLER** or any individual appointed thereby as Manager and Representative of **The Building** and the Condominium for a period of thirty six (36) months after the occupancy permit after which the Co-Owners' Meeting can decide otherwise through the special quorum established in the **Condominium Regulations**.

v) To pay to the **PROMISSOR SELLER** the monthly sums set forth herein starting on the date in which the Occupation Permit is issued.

vi) To refrain from assigning or transferring the rights and obligations resulting hereunder, whether in whole or in part without prior written consent by the **PROMISSOR SELLER** to be exercised by **PROMISSOR SELLER** in its sole discretion. In the event that **PROMISSOR SELLER** authorizes assigning said rights and obligations, **PROMISSOR BUYER** will pay **PROMISSOR SELLER** an eight per cent (8%) commission on the price of **The Unit** which corresponds three per cent (3%) for handling fees and five per cent (5%) in the event a broker service is required. The **PROMISSOR SELLER** anticipates introducing a resale program upon selling 85% of the entire building.

vii) To refrain from interfering in the construction of **The Building** or from requesting alterations or additional structure, ornamentation, equipment or finishing details.

viii) To pay the contribution established to create the initial fund that will be used and managed by the Condominium of **The Building**, which has been established at **TWENTY US DOLLARS** ($20.00) per square meter (M2), multiplied by the total area of **The Unit**.

ix) To accept that, according to the **Condominium Regulations**, the ownership and sale of the rooftop will be decided solely and exclusively by the **PROMISSOR SELLER.**

x) To accept that the **PROMISSOR SELLER** will have parking spaces and storage rooms in the **Building**, and that the **PROMISSOR SELLER** may decide whether to sell them or not and that any sale thereof of any type corresponds solely and exclusively to the **PROMISSOR SELLER** and its sole discretion.

ELEVEN: In the event that after executing this **Promise of Sale** and before starting the construction of the **Building** any event or circumstance or novelty of any nature should arise, or certain conditions are not met so that in the exclusive opinion and discretion of the **PROMISSOR SELLER** the construction of **The Building** is unadvisable or unreasonable, the **PROMISSOR SELLER** has the right to decline from constructing **The**

**Building** and the **PROMISSOR BUYER** hereby expressly and unquestionably agrees to and accepts said right and decision, in which case the Parties hereto agree that this **Promise of Sale** will terminate and therefore they agree to settle any present or future dispute before any competent authority concerning the compliance of the obligations agreed to hereunder by the return that the **PROMISSOR SELLER** will make of all amounts paid by **PROMISSOR BUYER** as part of the price of **The Unit**, along with a compensation interest estimated at three per cent (3%) per year, altogether as termination settlement sum.

**TWELVE:** The price of **The Unit** indicated in **Clause Six** hereof has been agreed considering current construction costs, as well as the cost of salaries, manual labor, worker's compensation, tax related liabilities and the price of construction material in force at the time this **Promise of Sale** is executed.

(a)   The parties therefore agree that any increase in the above mentioned costs will entitle the **PROMISSOR SELLER** to increase the price of **The Unit** in an amount equivalent to the said increase in prices, said increase not to exceed six per cent (6%) of the sale price of **The Unit**.

(b)   In the event of any such increase in price, **PROMISSOR SELLER** will immediately notify **PROMISSOR BUYER** in writing and **PROMISSOR BUYER** hereby accepts said increase and agrees to pay the difference in price together with the balance due on the price of **The Unit** as stated in section iv) of paragraph (a) of **Clause Six** hereof.

**THIRTEEN:** **PROMISSOR BUYER** hereby states having knowledge of and accepting the following:

i)   That the **PROMISSOR SELLER'S** liability for damages resulting from construction defects is limited to one (1) year only, starting on the date in which the corresponding authorities issue the Occupation Permit.

ii)   That enclosing balconies or terraces or any alterations to the exterior design of the **Building** is not permitted.

**FOURTEEN:** Without affecting **Clause Eleven** hereof, **PROMISSOR SELLER** hereby states that construction of the **Building** is currently estimated to begin no later than November 6, 2006 (hereinafter called the **Construction Starting Date**) and that consequently **The Unit** promised for sale will be ready approximately forty (40) months after the **Construction Starting Date**. The parties understand that the **Construction Starting Date** corresponds to the day in which pile work of the **Building** begins.

(a)   **PROMISSOR SELLER** has the authority to postpone the **Construction Starting Date**, until May 7, 2007, in which case **PROMISSOR SELLER** will provide **PROMISSOR BUYER** written notice indicating said postponement no later than November 15, 2006 and **PROMISSOR BUYER** hereby agrees to said postponement.

(b)   **PROMISSOR SELLER** has the authority to postpone the **Construction Starting Date** a second time until November 6, 2007 in which case **PROMISSOR**

Case 9:10-cv-81466-WPD   Document 6-1   Entered on FLSD Docket 11/15/2010   Page 8 of 9

8

SELLER will provide **PROMISSOR BUYER** written notice indicating said postponement no later than May 15, 2007. After receiving notice thereof, **PROMISSOR BUYER** must decide whether to agree to such postponement, in which case the parties irrevocably understand that **PROMISSOR BUYER** agrees with postponing the **Construction Starting Date** a second time or can request immediate return of all sums deposited to the HSBC Escrow Account mentioned in **Clause Six** hereof, together with approximately three per cent (3%) annual interest over said sums.

(c)    **PROMISSOR BUYER'S** failure to request in writing the return of all sums within 10 calendar days of **PROMISSOR SELLER'S** notice of such postponement shall be considered as accepting such postponement.

**FIFTEEN:** The fact that either one of the parties allows, one or several times, non-compliance by the other party, or an imperfect compliance, or compliance otherwise than as agreed upon, or does not insist on the compliance of such obligations, or does not exercise any corresponding contractual or legal rights in a timely fashion, shall not be deemed as nor be equivalent to an amendment hereof, nor ban in any case such party from insisting on the faithful and specific compliance of the obligations to be fulfilled by the other party, or from exercising its conventional or legal rights.

**SIXTEEN**: All legal and notary expenses caused by the **Public Deed of Sale** and of mortgage as the case may be, such as expenses incurred when recording in the Public Registry, will be exclusively payable by the **PROMISSOR BUYER**. All fiscal and stamp tax related expenses resulting from this **Promise of Sale**, as well as all notary, legal, recording, legal fees or any other expenses resulting from the **Public Deed of Sale** shall be paid exclusively by the **PROMISSOR BUYER.**

**SEVENTEEN:** All communications and notices to be made by the **PROMISSOR SELLER** to the **PROMISSOR BUYER** or vice-versa and related to this **Promise of Sale** must be addressed via courier, through certified mail and / or e-mail to the following addresses and / or telephones as the case may be:

PROMISSOR BUYER
Greg Landau and or Corporation to be formed

16425 Collins Ave #2916
Sunny Isles Beach, FL 33160
305-785-0088

PROMISSOR SELLER
Newland International Properties Corp.
C/O Mr. Roger Khafif,
Office #43, Galeria Balboa,
Galeria Balboa, Avenida Balboa,
Panama City, Rep. of Panama.

9

(507) 223-0200 (office)
(507) 223-0225 (fax)
E-mail: rogerk@trumpoceanclub.com

**EIGHTEEN:** This contract is subject to the laws of the Republic of Panama and any dispute concerning it will be subject first and foremost to the courts of Panama City, Republic of Panama.

The Parties hereby state that they are fully empowered to act and agree to the obligations contained herein and that consequently, each one accepts each and every clause contained herein in the terms and under the conditions hereby stated.

**NINETEEN:** The parties to the **Promise of Sale** acknowledge and accept that this agreement has been drafted in English and that any translation in Spanish might be provided upon request for reference only. Therefore the parties acknowledge and accept that in case of conflict between the English version of the **Promise of Sale** and any other version in any other language Spanish included, the English version shall prevail for all legal purposes.

The Parties hereby state that they are fully empowered to act and agree to the obligations contained herein and that consequently, each one accepts each and every clause contained herein in the terms and under the conditions hereby stated.

IN WITNESS WHEREOF, the parties execute this Agreement, the **Promise of Sale**, in USA _____ and Panama City, Republic of Panama, in two counterparts having the same content and effect, on this date 12/30 _____, in the year two thousand and six (2006.)

**THE PROMISSOR SELLER**

Signature

Print Name

**THE PROMISSOR BUYER**

Signature

Greg Landau and or Corporation to be formed
Print Name

ROGER KHAFIF
Identity card: N – 17 –630

DL#
Passport: L530-280-51-171-C