## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

CASE NO. 10-CV-81466-DIMITROULEAS/SNOW

GREG LANDAU, et al.,

               Plaintiffs,

vs.

NEWLAND INTERNATIONAL PROPERTIES
CORP., ROGER KHAFIF, THE TRUMP
ORGANIZATION, and DONALD TRUMP,

               Defendants.

_____/

## DEFENDANTS' MOTION TO DISMISS THE AMENDED
## COMPLAINT & INCORPORATED MEMORANDUM OF LAW

Defendants, Roger Khafif, The Trump Organization and Donald Trump, (collectively, "Defendants"), by and through their undersigned counsel, and pursuant to Federal Rule of Civil Procedure 12(b)(3) and 12(b)(6), hereby move to dismiss Plaintiffs' Amended Complaint for improper venue and failure to state a cause of action, and in support thereof state as follows:

### INTRODUCTION

Plaintiffs are purchasers of forty-two condominium units at the Trump Ocean Club International Hotel & Tower located in Panama (hereinafter, "Development," or "Trump Ocean Club"). Each purchaser signed a Purchase Agreement sometime between 2006 and 2009 (hereinafter, the "Purchase Agreements") with the developer, Newland International Properties Corp. (hereinafter "Newland" or "Developer").[1] Newland and the purchasers were the only signatories to the Purchase Agreements. *See* Exhibit Nos. 1 - 42 [D.E. # 6-10, 13].[2]

---

[1]   Newland is not a part of this Motion because it has not yet been served in this action.

[2]   Plaintiffs incorporated the Purchase Agreements for each purchaser into the Amended Complaint; however, many of the exhibits attached thereto are facially deficient and, at times, missing pages and/or dates. Defendants therefore attach to their Motion  fully executed copies of certain Purchase Agreements as follows: **Exhibit 16A** is the Purchase Agreement for Mikhail Gissin; **Exhibit 32A** is the Purchase Agreement for Senya Vayner and Samuil Kizherman; **Exhibit 33A** is the Purchase Agreement for David Feldman; **Exhibit 34A** is the Purchase Agreement for Ari Feldman; **Exhibit 35A** is the Purchase Agreement for Klavdya Feldman.

Plaintiffs filed a five-count[3] complaint against Newland, Roger Khafif, Donald Trump, and The Trump Organization before this Court in the Southern District of Florida -- contrary to the express terms of the forum selection clause in the Purchase Agreements which provide that all actions be brought in the courts of Panama -- alleging various claims in an effort to relieve Plaintiffs of their contractual obligations under the Purchase Agreements.  However, Plaintiffs' Amended Complaint is nothing more than an attempt by disgruntled real estate investors to try to

---

[3]   Plaintiffs' Amended Complaint asserts the following causes of action:

- Count I - Violation of 15 U.S.C. § 77e. Count I is incorporated into each of the other Plaintiffs' claims as Counts VI, XI, XVI, XXI, XXVI, XXXI, XXXVI, XLI, XLVI, LI, LVI, LXI, LXVI, LXXI, LXXVI, LXXXI, LXXXVI, XCI, XCVI, CI, CVI, CXI, CXVI, CXXI, CXXVI, CXXXI, CXXXVI, CXLI, CXLVI, CLI, CLVI, CLXI, CLXVI, CLXXI, CLXXVI, CLXXXI, and for purposes of this Motion these Counts will hereafter be collectively referred to as "Count I," except as where stated.

- Count II - Control Person Liability. Count II is incorporated into each of the other Plaintiffs' claims as Counts VII, XII, XVII, XXII, XXVII, XXXII, XXXVII, XLII, XLVII, LII, LVII, LXII, LXVII, LXXII, LXXVII, LXXXII, LXXXVII, XCII, XCVII, CII, CVII, CXII, CXVII, CXXII, CXXVII, CXXXII, CXXXVII, CXLII, CXLVII, CLII, CLVII, CLXII, CLXVII, CLXXII, CLXXVII, CLXXXII, and for purposes of this Motion these Counts will hereafter be collectively referred to as "Count II," except where stated.

- Count III - Violation of 18 U.S.C. §§ 1961-1968 (the Racketeer Influenced and Corrupt Organizations Act (hereafter "RICO")).  Count III is incorporated into each of the other Plaintiffs' claims as Counts VIII, XIII, XVIII, XXIII, XXVIII, XXXIII, XXXVIII, XLIII, XLVIII, LIII, LVIII, LXIII, LXVIII, LXXIII, LXXVIII, LXXXIII, LXXXVIII, XCIII, XCVIII, CIII, CVIII, CXIII, CXVIII, CXXIII, CXXVIII, CXXXIII, CXXXVIII, CXLIII, CXLVIII, CLIII, CLVIII, CLXIII, CLXVIII, CLXXIII, CLXXVIII, CLXXXIII, and for purposes of this Motion these Counts will hereafter be collectively referred to as "Count III," except where stated.

- Count IV - Violation of 15 U.S.C. § 1703(a)(1)(C) of the Interstate Land Sales Full Disclosure Act (hereafter "ILSA").  Count IV is incorporated into each of the other Plaintiffs' claims as Counts IX, XIV, XIX, XXIV, XXIX, XXXIV, XXXIX, XLIV, XLIX, LIV, LIX, LXIV, LXIX, LXXIV, LXXIX, LXXXIV, LXXXIX, XCIV, XCIX, CIV, CIX, CXIV, CXIX, CXXIV, CXXIX, CXXXIV, CXXXIX, CXLIV, CXLIX, CLIV, CLXIV, CLXIX, CLXXIV, CLXXIX, CLXXXIV, and for purposes of this Motion these Counts will hereafter be collectively referred to as "Count IV," except as where stated.

- Count V - Violation of 15 U.S.C. § 1703(a)(1)(B) of ILSA.  Count IV is incorporated into each of the other Plaintiffs' claims as Counts X, XV, XX, XXV, XXX, XXXV, XL, XLV, L, LV, LX, LXV, LXX, LXXV, LXXX, LXXXV, XC, XCV, C, CV, CX, CXV, CXX, CXXV, CXXX, CXXXV, CXL, CXLV, CL, CLV, CLX, CLXV, CLXX, CLXXV, CLXXX, CLXXXV and for purposes of this Motion these Counts will hereafter be collectively referred to as "Count V," except as where stated.

get out of contracts that they negotiated and signed because the real estate market declined. Interestingly, Plaintiffs' Amended Complaint neglects to mention that Plaintiff Greg Landau was the co-broker for the forty-two Purchase Agreements at issue in the Amended Complaint. It was only **after receiving millions of dollars** in brokerage commissions from Newland that Plaintiff Greg Landau, together with the other purchasers that he represented, now seeks to avoid his Purchase Agreements and have his deposits returned. As set forth more fully below, all the claims asserted in the Amended Complaint must be dismissed because venue is improper in Florida and the claims fail to state a causes of action as a matter of law.

## ARGUMENT

I.  **The Amended Complaint Should Be Dismissed For Improper Venue Under Fed. R. Civ. P. 12(b)(3) Because The Forum Selection Clause In Plaintiffs' Purchase Agreements Designate Panama As The Proper Forum For This Action.**

The Amended Complaint should be dismissed against all Defendants for improper venue under Fed. R. Civ. P. 12(b)(3) because Plaintiffs entered into a mandatory forum selection clause by which they agreed that the courts of Panama have jurisdiction over this dispute.[4]

### A.    The Purchase Agreements' Forum Selection Clause is Presumptively Valid.

Forum selection clauses in international agreements are presumptively valid. *See M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972) (stating that choice-of-forum clauses are "prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances"); *Lipcon*, 148 F.3d at 1295; *Wai v. Rainbow Holdings*, 315 F. Supp. 2d 1261 (S.D. Fla. Feb. 23, 2004) ("It is well settled that forum selection clauses 'are presumptively valid where the underlying transaction is fundamentally international in character."). As the Supreme Court concluded in *Bremen*, a "forum [selection] clause should control absent a 'strong showing' that it should be set aside." *See M/S Bremen*, 407 U.S. at 15. The issue of enforceability of a forum selection clause is governed by federal law. *P. & S. Business Machines, Inc. v. Canon USA Inc.*, 331 F.3d 804, 807 (11th Cir. 2003) (applying

---

[4]     When a forum selection clause designates a forum outside the United States, motions to dismiss are properly brought pursuant to Rule 12(b)(3), Federal Rules of Civil Procedure. *See Lipcon v. Underwriters at Lloyd's, London*, 148 F.3d 1285, 1290 (11th Cir. 1998), ("[W]e hold that motions to dismiss upon the basis of choice-of-forum and choice-of-law clauses are properly brought pursuant to Fed. R. Civ. P. 12(b)(3) as motions to dismiss for improper venue.") The court may consider matters outside the pleadings, including affidavit testimony and documentary evidence, particularly where the motion is predicated on key issues of fact. *See, e.g., Fred Lurie Assocs., Inc. v. Global Alliance Logistics, Inc.*, 453 F. Supp. 2d 1351, 1353 (S.D. Fla. 2006); *Webster v. Royal Caribbean Cruises, Ltd.*, 124 F. Supp. 2d 1317, 1320 (S.D. Fla. 2000).

federal law to the enforceability of forum selection clause even in diversity jurisdiction cases). Here, the forum selection clause in Paragraph 18 of the Purchase Agreements provides:

> This contract is subject to the laws of the Republic of Panama and *any dispute concerning it will be subject first and foremost to the courts of Panama City, Republic of Panama.*

Purchase Agreement, ¶ 18(emphasis added) [D.E. # 6-10, 14]. The forum selection clause is mandatory because it sets forth an exclusive forum in which Plaintiffs are to bring their claims concerning the Purchase Agreements. *Global Satellite Comm. Co. v. Starmill U.K. Ltd.*, 378 F.3d 1269, 1272 (11th Cir. 2004)

The Purchase Agreements' forum selection clause contains language stating that "any dispute . . . *will be* subject. . .to the courts of Panama" and the inclusion of such language makes the clause mandatory. *Emerald Grande, Inc. v. Junkin*, 334 Fed. Appx. 973 (11th Cir. 2009); *see, e.g., Hewitt v. Helms*, 459 U.S. 460, 471-72 (1983) (finding that mandatory language included using words such as 'shall,' 'will,' or 'must' in statutes or regulations). In *Emerald Grande, Inc. v. Junkin*, 334 Fed. Appx. 973 (11th Cir. 2009), the Eleventh Circuit agreed with the district court's finding that the use of the word "will" was sufficient to evidence the parties' intent to designate a location as the exclusive place for litigation. *Id.*; *Emerald Grande, Inc. v. Junkin*, 2008 WL 2776229, *4 (N.D. Fla. 2008).

Moreover, the forum selection clause at issue is mandatory because it makes clear that any dispute will be subject "first and foremost to the courts of Panama." *See, e.g., Pelican Ventures LLC, v. Azimut S.p.a.*, 2004 WL 3142550, *5 (S.D. Fla. 2004) (concluding that the forum selection clause which stated "the place of jurisdiction shall be the Turin Courts" in Italy was mandatory even though the clause did not contain words of exclusivity); *Velazquez v. USA Sogo, Inc.*, 1999 WL 737915 (S.D. Fla. 1999), *aff'd*, 234 F.3d33 (11th Cir. 2000) (holding a forum selection clause was mandatory which stated that "any dispute or claim shall be submitted to the Courts of Barcelona, Spain" even without specific words of exclusivity). Accordingly, the forum selection clause in the Purchase Agreements is mandatory and presumptively valid.

>        **B.     The Forum Selection Clause Applies to all of Plaintiffs' Claims Against all Defendants.**

The forum selection clause applies to each of Plaintiffs' claims, regardless of whether the claims sound in breach of contract or tort. It is well settled that "[s]trategic or artfully drawn pleadings . . . will not work to circumvent an otherwise applicable forum selection clause." *Terra Int'l, Inc. v. Miss. Chem. Corp.*, 119 F.3d 688, 695 (8th Cir. 1997). Moreover, as

explained below, the forum selection clause may be invoked by non-signatories, especially when, as here, the Amended Complaint attempts to allege interdependent and concerted misconduct.

### 1.     The Forum Selection Clause Applies to all Counts.

"[C]ontractual and tort claims, whether common law or statutory, involving the same operative facts 'should be heard in the forum selected by the contracting parties.'" *Woods v. Christensen Shipyards, Ltd.*, 2005 WL 5654643, at *7 (S.D. Fla. Sept. 3, 2005). To determine if the scope of a forum selection clause encompasses statutory or tort claims, a court should "consider[] whether resolution of the claims relates to interpretation of the contract, whether the claims are dependant upon the existence of a contractual relationship between the parties, and [] compar[e] the operative facts of the case with the operative facts of a parallel claim for breach of contract if one were to be brought." *Thunder Marine, Inc. v. Brunswick Corp.*, 2006 WL 1877093, at *6 (M.D. Fla. July 6, 2006).

Each of Plaintiffs' claims is dependent on the existence of a contractual relationship between the parties because Plaintiffs seek to recover in Counts I through V the deposits paid pursuant to the Purchase Agreement.[5] Am. Compl., *ad damnum* clauses (Counts I through V) [D.E. #12]; *Id.* at ¶¶ 94, 110, 128. Moreover, the forum selection clause broadly applies to "any dispute" concerning the contract, which is sufficient to encompass all claims raised in the Amended Complaint because all claims arise out of the contractual relationship between Newland and Plaintiffs and involve the same operative facts.

Plaintiffs claims in Count I and II are related to the Purchase Agreements because Plaintiffs allege that Defendants are liable because those contracts are "investment contracts" and they allege are governed by federal securities laws. Am. Compl. ¶¶ 67-82. However, determining whether Plaintiffs state a claim under the securities laws requires an interpretation of the Purchase Agreements and the disclosures provided therein.

Additionally, Plaintiffs' RICO claim also arises from the contractual relationships and is predicated upon alleged interdependent and concerted misconduct amongst all Defendants. Am. Compl. ¶¶ 83-110. *See Stewart Org., Inc. v. Ricoh Corp.*, 810 F.2d 1066, 1070 (11th Cir.

---

[5]   *Cf. Omron Healthcare, Inc. v. Maclaren Exports Ltd.*, 28 F.3d 600, 602 (7th Cir. 1994) (forum selection clause which stated that "parties hereto agree that all disputes arising out of this Agreement which cannot be resolved amicably between the parties shall be referred to the High Court of Justice in England" applied to plaintiff's trademark infringement claim because "the instant dispute would not have arisen if [the parties] had never entered into their Distribution Agreement").

1987) (noting that "[c]ommercial contractual issues are commonly intertwined with claims in tort..." and finding that forum selection clause covered "all causes of action arising directly or indirectly from the business relationship evidenced by the contract"); *see, e.g., Infections Disease Solutions, PC v. Synamed*, 2007 WL 2454093 (N.D. Ga. 2007) (applying forum selection clause which provided that "any and all proceedings relating to the subject matter [of this Agreement] shall be maintained in the New York State" included fraud and civil RICO claims as the claims were closely related to the contracts); *Crescent Intl., Inc. v. Avatar Communities, Inc.*, 857 F. 2d 943 (3d Cir. 1988) (fraud and RICO claims contained allegations arising out of the agreement and thus forum selection clause applied to those claims); *American Patriot Insurance Agency, Inc. v. Mutual Risk Management, Ltd.*, 364 F.3d 884 (7th Cir. 2004) (pleading fraud and claims against defendants not parties to the agreement is insufficient to defeat a forum selection clause). Moreover, Plaintiffs' allegations of mail and wire fraud in Count III do not prevent application of the forum selection clause "unless there is a showing that the alleged fraud or misrepresentation induced the party opposing a forum selection clause *to agree to inclusion of that clause* in the contract, a general claim of fraud or misrepresentation as to the entire contract does not affect the validity of the forum selection clause." *Moses*, 929 F.2d at 1138 (citing *Scherk v. Alberto-Culver Co.*, 417 U.S. 506 (1974)). No such allegations are contained in the Amended Complaint.

Finally, in Count IV and V, Plaintiffs allege Defendants violated § 1703(a)(1)(C) and § 1703(a)(1)(B) of ILSA for purported material misrepresentations regarding the sale of the units that Plaintiffs contracted to purchase and for failing to provide Plaintiffs with a property report in connection with the purchase.   In addition to the fact that these claims seek to rescind the Purchase Agreements, determining whether Plaintiffs state a cause of action under ILSA requires an interpretation of the Purchase Agreements and their terms.   Because the resolution of Plaintiffs' ILSA claims not only relates to but requires an interpretation of the contracts, the forum selection clause applies to Plaintiffs' claims in Count IV and V. For all these reasons, the forum selection clause encompasses each claim in Plaintiffs' Amended Complaint.

### 2.   Defendants Roger Khafif, Donald Trump, and The Trump Organization May Enforce the Forum Selection Clause.

Defendants may enforce the forum selection clause as non-signatories to the Purchase Agreements because of the interdependence of the claims alleged against Newland and Defendants.   Here, the forum selection clause broadly applies to "any dispute" concerning the contract and Plaintiffs' attempts to assert claims against individuals not a signatories to the

contract does not defeat application of forum selection clause. *See, e.g., American Patriot Insurance Agency, Inc. v. Mutual Risk Management, Ltd.*, 364 F.3d 884 (7th Cir. 2004) (pleading fraud and claims against not parties is insufficient to defeat a forum selection clause).

Defendants, as non-parties to the Purchase Agreements, can enforce the forum selection clause because Defendants are 'closely related' to the dispute and it is foreseeable they would be bound by the clause. *Lipcon v. Underwriters at Lloyd's, London*, 148 F.3d 1285, 1299 (11th Cir.1998) (In order to bind a non-party to a forum selection clause, the non-party must be "closely related" to the dispute such that it becomes "foreseeable" that it will be bound."); *Swisher International, Inc. v. Isa Chicago Wholesale, Inc.*, 2009 WL 1405177 (M.D. Fla. 2009) (same). The claims among the Defendants are intertwined because Plaintiffs' core contention is that absent Defendants' purported misrepresentations or concealment regarding financing options, the location of the Beach Club, and the branding of the "Trump Casino," Plaintiffs would not have purchased the units or entered into the purchase contracts. Am. Compl. ¶¶ 47-48, 58, 62-63 [D.E. #12].

Moreover, Defendants' alleged close relationship is established by the allegations of the Amended Complaint. Plaintiffs' allege that Roger Khafif was acting as President of Newland and that Donald Trump and The Trump Organization were partners [of Roger Khafif]. *Id.* at ¶ 64. *See Infectious Disease Solutions, PC*, 2007 WL 2454093 (N.D. Ga. 2007) (transferring case pursuant to forum selection clauses which were not made unenforceable by plaintiff's addition of company officer as a defendant inasmuch as individual's "only relation to [plaintiff] is through the contracts" and individual was "closely related to the dispute and the contracts"); *Vickers v. Wells*, 2006 WL 89858, at *3-4 (N.D.Ga. 2006)(finding that defendant, as president of the company that entered into the employment agreement with plaintiff, was "sufficiently 'closely related' to the contract and to this dispute" such that he was "plainly entitled to enjoy the benefits of the forum selection clause"). Accordingly, Defendants may properly enforce the forum selection clause in the Purchase Agreements.

### C.   Plaintiffs Cannot Make a Strong Showing that Enforcement of the Mandatory Forum Selection Clause Would be Unreasonable.

To invalidate the forum selection clause, Plaintiffs have the burden of making a strong showing that enforcement of the clause would be unreasonable under the circumstances. *See M/S Bremen*, 407 U.S. at 10, 15; *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585 (1991); *P&S Bus. Machs, Inc.*, 331 F.3d 804, 807 (11th Cir. 2003) ("The burden is on the party opposing the

enforcement of the forum selection clause to show that the contractual forum is sufficiently inconvenient to justify retention of the dispute."). Plaintiffs cannot carry that burden because none of the judicially-recognized bases for invalidating a forum selection clause apply here.

There are only four judicially-recognized bases to negate application of a forum selection clause: (a) the clause was induced by fraud or overreaching; (b) the plaintiff effectively would be deprived of its day in court because of the inconvenience or unfairness of the chosen forum; (c) enforcement would be unreasonable and unjust because the fundamental unfairness of the chosen forum's law would deprive the plaintiff of a remedy; or (d) enforcement of the clause would contravene a strong public policy of the forum in which suit is brought. *See M/S. Bremen*, 407 U.S. at 14-16; *Lipcon*, 148 F.3d at 1292 (adopting the *Bremen* exceptions). This is not the rare case in which the forum selection clause can be negated or invalidated.

First, Plaintiffs do not allege (nor could they) that the forum selection clause was induced by fraud or overreaching. Under *Bremen's* fraud exception, a party must demonstrate that the inclusion of the forum selection clause itself was the product of fraud or overreaching. *See Lipcon*, 148 F.3d at 1296; *see also Tradex Global Master Fund SPC Ltd. v. Palm Beach Capital Mgmt., LLC*, 2010 WL 717686, at *5-6 (S.D. Fla. 2010) (stating that the "fraud and overreaching must be specific to a forum selection clause in order to invalidate it" and enforcing clause requiring plaintiffs to litigate in the Cayman Islands). Plaintiffs have made no allegations to support such a finding here. Moreover, the forum selection clause was in no way hidden from Plaintiffs or buried in contract minutia. Rather, the clause was its own paragraph and far less clear and significantly more camouflaged forum selection clauses have been upheld. *See, e.g., Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585 (1991).

Second, Plaintiffs do not allege (nor can they show) that enforcement of the forum selection clause would deprive them of their day in court. Panama is not so remote or gravely inconvenient to Plaintiffs, almost all of whom would need to travel to Florida to pursue this suit. Of the thirty-eight Plaintiffs in this action, twenty are Panamanian corporations, four are individuals that purportedly reside in New Jersey, seven are individuals that purportedly reside in New York, two are individuals that purportedly reside in Michigan, one is an individual that purportedly resides in Russia, one is an individual that purportedly resides in Massachusetts, and only three are individuals that purportedly reside in Florida.  Am. Compl. ¶¶ 1-38 [D.E. #12]. Any inconvenience or additional expense to travel to or pursue their claims in Panama cannot invalidate the forum selection clause, particularly where it was foreseeable when the Plaintiffs

executed the Purchase Agreements for property located in Panama that suits regarding same would be have to be brought in Panama. *See, e.g., Fred Lurie Assocs.*, 453 F. Supp. 2d at 1356 (finding that potential inconvenience and financial hardship of litigating in selected forum was insufficient to invalidate forum selection clauses, particularly where it was foreseeable at time of contracting); *see Pelican Ventures*, 2004 WL 3142550, at *7 (noting that chosen forum was the defendants' corporate home, and it was reasonable that defendants would have a uniform policy to be sued in their home forum rather than subject themselves to the uncertainties of litigation in worldwide fora). It is not unfair to litigate the meaning of real estate contracts to purchase Panamanian property in Panama where the property is located and where Defendants work.

Third, the fundamental fairness exception is inapplicable. This exception only applies "where the nature of the other forum's law which the clause would require to be applied would necessarily preclude recovery for the plaintiff." *Fred Lurie Assocs.*, 453 F. Supp. 2d at 1355 (citations omitted). It is insufficient to merely allege that the foreign law and its procedures are different or even less favorable than those in this forum. *See Lipcon*, 148 F.3d at 1297 (holding that plaintiffs' federal securities claims were subject to forum selection clause providing for venue in England even though there was "little doubt that the United States securities laws would provide [plaintiffs] with a greater variety of defendants and a greater chance of success . . ."). Panama law is admittedly different from U.S. law in some respects.[6] Nonetheless, courts have found that, despite such differences, Panama is an adequate forum. *See, e.g., Gonzalez v. Watermark Realty Inc.*, 2010 WL 1299740 (S.D. Fla. 2010) (enforcing forum selection clause providing for application of Panama law and jurisdiction in Panama). Here, Plaintiffs cannot make a strong showing that they would necessarily be denied any right to recovery in Panama, and *Bremen's* "fundamental fairness" exception does not apply.

Finally, there is no strong public policy of this forum that would be contravened by this Court's enforcement of the mandatory forum selection clause. In fact, there is a strong public policy here in favor of enforcing mandatory forum selection clauses in international agreements. *See M/S Bremen*, 407 U.S. at 15-17 (discussing the importance of forum selection clauses in international agreements); *Lipcon*, 148 F.3d at 1294-95 (same). Plaintiffs cannot establish the

---

[6]   Plaintiffs may argue that Panamanian law provides for different, less favorable, or fewer remedies than those available to Plaintiffs pursuant to U.S. law. This argument would be disingenuous because even if the Court kept the case in Florida, Panamanian law would clearly apply due to the choice of law clauses in the contracts. *See* Purchase Agreements, ¶18.

existence of an actual policy conflict and thus *Bremen's* public policy exception does not apply.

Given that the *Bremen* exceptions do not apply here, the mandatory forum selection clause should be enforced.

**II.**   **Plaintiffs' Amended Complaint Fails To State Causes Of Action As A Matter Of Law Because The Choice Of Law Provision In The Purchase Agreements Expressly States That Panama Law Applies And Thus Plaintiffs' Claims Under United States Laws Must Be Dismissed.**

Contrary to the express terms of the choice of law provision in the Purchase Agreements, which state that Panama law applies, Plaintiffs assert claims against Defendants in Count II, IV, and V for purported violations of various United States laws. In Count II, Plaintiffs assert a claim for controlling person liability under 15 U.S.C. § 77*o* and, in Counts IV and V, Plaintiffs assert violations of ILSA against Defendants. Counts II, IV, and V should be dismissed with prejudice, however, because the choice of law provision in the Purchase Agreements renders the purported ILSA and securities violations inapplicable to the transactions at issue.

Paragraph 18 of the Purchase Agreements expressly provide that the choice of law is Panama law. *See* Purchase Agreements, ¶18. This is also consistent with Article 6 of the Civil Code of Panama which states that "[a]ssets situated in Panama are subject to Panamanian laws, even though the owners thereof are foreigners and reside outside of Panama." *See* Art. VI, Panama Civ. Code. Here, Plaintiffs are attempting to assert claims under United States securities laws and ILSA, despite expressly agreeing that Panama law and the courts of Panama would govern the disputes. As explained below, because the plain language of the Purchase Agreements states that Panama law applies, all of Plaintiffs' claims are subject to dismissal.

First, the Eleventh Circuit in *Lipcon* previously held that choice clauses in international agreements, like the choice of law provision and forum selection clause in the Purchase Agreements at issue, are enforceable and not contrary to public policy even when it "may operate 'in tandem' as a prospective waiver of the statutory remedies for securities violations," *Lipcon*, 148 F.3d at 1287, 1298. In addressing the "question of whether the anti-waiver provisions of the United States securities laws preclude enforcement of certain choice-of-law and forum-selection clauses," the Court recognized "that international agreements - even those that render United States securities law inapplicable -- are *sui generis*" and that these choice of law and forum clauses are an "almost indispensable precondition to achievement of the orderliness and predictability essential to any international business transaction[.] " *Id.* at 1287, 1293. The Eleventh Circuit found that to conclude that anti-waiver provisions of United States

statutory laws "categorically preclude sophisticated parties from entering into international agreements-agreements that by definition involve parties and subject matter that would be subject to the laws of more than one nation if the parties did not contract *ex ante* for provisions governing choice of forum and choice of law" would undermine the policies of judicial comity and orderliness in international business transactions. *Id.* at 1294-95. Here, like in *Lipcon*, the Purchase Agreements' choice of law provision precludes Plaintiffs from asserting claims under U.S. Securities laws and thus Plaintiffs' claims in Count II should be dismissed.

The same is true for Plaintiffs' claims under ILSA. *Liles v. Ginn-La West End, Ltd.,*2011 WL 284500, *7 (11th Cir. 2011). In *Liles*, plaintiffs purchased property in a subdivision in the Bahamas. *Id.* at *1. After signing the purchase contracts, plaintiffs sought rescission of those purchase contracts and damages pursuant to ILSA. *Id.* Defendants moved to dismiss the claims, arguing that plaintiffs were required to bring suit in the Bahamas under the purchase contracts forum selection and choice of law clauses. *Id.* The district court dismissed the case, disagreeing with plaintiffs' argument that the enforcement of the choice clauses would be contrary to public policy. *Id.* On appeal, the Eleventh Circuit Court posited that because the purchase contract's specifically referenced ILSA, the parties had not waived the provisions of ILSA through the choice of law provision in the purchase contracts. *Id.* However, the Eleventh Circuit explained that:

> **Had the contracts made no reference to ILSA, *Lipcon* appears to instruct that Defendants may well have been able to lawfully obtain a prospective waiver of all rights under ILSA through choice of forum and law clauses.** This Court need not decide that question because such is not the case here as the contracts specifically invoke ILSA's disclosure obligations and rights.

*Id.* at *7 (internal citation omitted). Unlike, in *Liles*, the plain language of the Purchase Agreements do not reference or make any mention of ILSA and, thus, as the Eleventh Circuit explained, Defendants, through the Panamanian choice of law provision in the Purchase Agreements, "lawfully obtain[ed] a prospective waiver of all rights under ILSA." *Id.* Accordingly, Plaintiffs have failed to state a cause of action under ILSA and Counts IV and V should be dismissed. Thus, this Court should dismiss all claims against Roger Khafif, Donald Trump, and The Trump Organization in Plaintffs' Amended Complaint.

## III. Count II Should Be Dismissed Pursuant To Fed. R. Civ. P. 12(b)(6) Because Plaintiffs Failed To State A Claim For Control Person Liability.

To the extent the Court does not dismiss Count II pursuant to the choice of law provision

in the Purchase Agreements, Count II still fails because the underlying securities violations are time-barred, the Purchase Agreements are not investment contracts, and Plaintiffs have failed to plead facts sufficient to establish each Defendants' control over Newland.

> **A.      Counts II should be dismissed with prejudice as a matter of law because Plaintiffs cannot maintain a claim for controlling person liability when the alleged underlying primary violation is time-barred.**

In Count II, Plaintiffs allege controlling person liability against Defendants under 15 U.S.C. § 77o.[7]  *See* Am. Compl. ¶ 82.  Under this provision, "a person who controls a party that commits a violation of the securities laws may be held jointly and severally liable with the primary violator," and this liability is collectively referred to as "control person liability." *Maher v. Durango Metals, Inc.*, 144 F. 3d 1302, 1304 & n.7 (10th Cir. 1998) ("[A]lthough worded differently, the control person provisions of §15 [of the '33 Act] and §20(a) [of the '34 Act] are interpreted the same").

These provisions establish "liability for 'controlling persons'-that is, those who exercise control over primary violators of [the 1933 and 1934 Acts]. A necessary element of a [control person liability] claim is a **primary violation**[.]" *Cooperman v. Individual Inc.*, 171 F. 3d 43, 52 (1st Cir. 1999)(emphasis added); *see also Klein v. Gen.l Nutrition Cos.*, 186 F.3d 338, 344 (3d Cir. 1999) (control person liability "hinges on liability under either §77k or §77l"). Since liability as a controlling person is derivative, dismissal of a Section 15 claim is appropriate where there is no primary liability. *J&R Marketing, SEP v. Gen. Motors*, 549 F.3d 384, 398 (6th Cir. 2008).

Here, Count II is predicated upon Newland's alleged violation of 15 U.S.C. § 77e.  *See* Am. Compl. ¶ 81 (alleging that "Defendants. . . .allowed Newland International Properties to engage in acts. . .which give rise to liability *under 15 U.S.C. § 77e.*")(emphasis added). Moreover, Newland's alleged violation in Count I is for a purported violation of 15 U.S.C. § 77e due to Newland's purported failure to file a registration statement with the Securities and Exchange Commission. *Id.* at ¶ 73. Because Plaintiffs have only  attempted to allege a primary

---

[7] Section 15 of the '33 Act provides:

> Every person who, by or through stock ownership, agency, or otherwise, or who, pursuant to or in connection with an agreement or understanding with one or more other persons by or through stock ownership, agency, or otherwise, controls any person liable under section 77k[section 11] or 77l[section 12] of this title, shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable . . . .

15 U.S.C. § 77o.

violation of 15 U.S.C. § 77e against Newland, civil liability governing this section is codified under 15 U.S.C.§ 77*l*(a)(1)[8] which only provides a one year statute of limitations. As set forth below, because Plaintiffs cannot, as a matter of law, maintain a primary violation of 15 U.S.C. § 77e against Newland, Plaintiffs' claims against Defendants in Count II should be dismissed since there can be no controlling person liability when the primary violation cannot be maintained.

Plaintiffs allege that the Purchase Agreements between them and Newland constitute "investment contract[s]" that Newland never registered with the Securities and Exchange Commission and, thus, Plaintiffs should be entitled to rescind their contracts and receive their deposits. *Id.* at ¶¶ 72-73. The Securities Act of 1933 places a limitation on any action seeking liability because a seller failed to register a security. To enforce liability for failure to register a security, a buyer of the security must bring the action "within one year after the violation upon which it is based." 15 U.S.C. § 77m. The one-year limitations period applicable to claims under Section 12(a)(1) is triggered upon the alleged violation - not upon the injured party's discovery of the violation. *See Cook v. Avien, Inc.*, 573 F.2d 685, 691 (1st Cir. 1978) ("[T]he limitations period runs from the date of the violation irrespective of whether the plaintiff knew of the violation."); *Temple v. Gorman*, 201 F. Supp. 2d 1238, 1241 (S.D. Fla. 2002) ("This Court agrees with numerous other district courts that have held that the discovery rule does not apply to [§ 77*l*(a)( 1)] claims."); *Trilogy Properties LLC v. SB Hotel Associates LLC*, Case No. 09-21406-CIV-JORDAN (granting defendants' motion to dismiss and holding that "the discovery rule" does not apply to §77*l*(a)(1) claims).

Dismissal is appropriate if, on the face of the complaint, it is apparent that the claim is time-barred. *See Tello v. Dean Witter Reynolds, Inc.*, 410 F.3d 1275, 1288 (11th Cir. 2005). Plaintiffs in this action filed the suit on November 12, 2010 and, as such, the statute of limitations prevents Plaintiffs from suing for any violation occurring before **November 12, 2009**. *Trilogy Properties LLC v. SB Hotel Associates LLC*, Case No. 09-21406-CIV-JORDAN (granting defendants' motion to dismiss and finding that a one year statute of limitations applied from the date plaintiffs' signed the purchase contract under the same type of claim). Here, as set forth in the chart below, which summarizes the dates each purchaser

---

[8]   15 U.S.C.§ 77*l*(a)(1) confers liability when "any person. . .offers or sells a security in violation of section 77e of this title." 15 U.S.C. § 77*l*(a)(1) (emphasis supplied).

signed the Purchase Agreements at issue, each purported violation occurred before November 12, 2009.[9]

| Exhibit | Purchaser Name | Unit | Date Signed |
|---|---|---|---|
| 1 | Greg Landau | 3502 | 12/30/2006 |
| 2A | T.O.C. R01-A, LLC | R01-A | 2009 |
| 3A | T.O.C. R01-B, LLC | R01-B | 2009 |
| 4 | Eugenia Baumel | 5314 | 2006 |
| 5 | Bella Mar Corp. | 4514 | 11/12/2008 |
| 6 | Thaddeus and Dorothy Bielenda | 1909 | 11/9/2006 |
| 7 | Thaddus and Dorothy Bielenda | 3320 | 11/9/2006 |
| 8 | Semyon Braymen and Roza Braymen | 2205 | 11/1/2006 |
| 9 | Che Biz Oceanic, LLC | 4001 | 2006 |
| 10 | Che Biz Oceanic, LLC | 4005 | 2006 |
| 11 | Che Biz Oceanic, LLC | 4306 | 2006 |
| 12 | Che Biz Oceanic, LLC | 5906 | 2006 |
| 13 | Avi Cohen | 5313 | 10/23/2006 |
| 14 | Vista Del Mar 4912, S.A. | 4912 | 11/12/2008 |
| 15 | Ocean View Group, Corp. | 5903 | 11/12/2008 |
| 16A | Mikhail Gissin | 3705 | 12/6/2006 |
| 17 | Golden Club of Panama, Inc. | 3613 | 11/12/2008 |
| 18 | Silver Club, S.A. (Victor Masaltsev) | 5705 | 2006 |
| 19 | Milanda Corp., S.A. | 4501 | 11/12/2008 |
| 20 | Gene Mirvis | 2806 | 2006 |
| 21A | Alex Orlikov | 407 | 5/10/2008 |
| 22 | Nadezda Corporation, S.A. | 4311 | 11/12/2008 |
| 23 | Goodwill Corp., S.A. | 5809 | 11/12/2008 |
| 24 | Tropical Investment Group | 3104 | 11/12/2008 |
| 25 | T.O.C. No. 3606, Inc. | 3606 | 4/14/2009 |
| 26 | New Horizon Investments, Inc. | 4607 | 11/12/2008 |
| 27 | Pacific Investments Opportunity, S.A. | 3904 | 11/12/2008 |
| 28 | Ocean Club 3202 Corporation | 3202 | 4/14/2009 |
| 29 | Sunshine Business Group, S.A. | 4415 | 11/12/2008 |
| 30 | Altrof Corp., S.A. | 4406 | 11/12/2008 |
| 31 | Botrain Corp., S.A. | 5111 | 11/12/2008 |
| 32 | Senya Vayner and Samuil Kizhnerman | 4615 | 10/4/2006 |
| 33A | David Feldman | 3805 | 11/22/2006 |
| 34A | Ari Feldman | 2809 | 11/22/2006 |

---

[9]   To the extent Plaintiffs argue that a primary violation can still be established under the "last pertinent activity" test because the units have not yet closed, such an argument would not prevent dismissal of the primary violation and the derivative liability alleged against Defendants because, according to the Amended Complaint, it is the purchase agreements that constitute the unregistered "investment contracts."   Am. Compl. ¶ 72; *Trilogy Properties LLC v. SB Hotel Associates LLC*, Case No. 09-21406-CIV-JORDAN (finding that it was not the delivery of the deed that triggers the statute of limitations, but the signing of the purchase agreements that controls).

| 35A | Klavdya Feldman | 3209 | 11/22/2006 |
| 36 | David and Donna Sasson | 3109 | 11/3/2006 |
| 37 | David and Donna Sasson | 5410 | 11/3/2006 |
| 38 | Farit Kouramshin | 2401 | 2006 |
| 39 | T.O.C. No. 3105, Inc. | 3105 | 4/14/2009 |
| 40 | Tropical Life Group, Inc. | 5803 | 11/12/2008 |
| 41 | Che Biz Oceanic, LLC | 3201 | 2006 |
| 42 | Che Biz Oceanic, LLC | 5806 | 2006 |

Thus, the one-year statute of limitations prevents Plaintiffs from suing Newland under the Securities Act of 1933.[10]  *See Trilogy Properties LLC v. SB Hotel Associates LLC*, Case No. 09-21406-CIV-JORDAN.  Even assuming the contracts at issue were "investment contracts," which they are not, the statute of limitations prevents Plaintiffs from filing a claim against Newland  for a purported violation of 15 U.S.C. § 77e.  Because controlling person liability is derivative and cannot be asserted in the absence of a primary violation, without a predicate violation, the derivative claim should be dismissed. *See Brown v. Enstar Group, Inc.*, 84 F.3d 393 (11th Cir. 1996); *Ehlert v. Singer*, 245 F.3d 1313, 1320 (11th Cir. 2001). Accordingly, Plaintiffs' claim against Defendants in Count II for controlling person liability under 15 U.S.C. § 77*o* must be dismissed.

**B.     Count II should also be dismissed with prejudice because the purchase agreements are not investment contracts and thus no underlying primary violation occurred.**

Even assuming *arguendo* that Plaintiffs' claims are not time-barred, the Purchase Agreements are not investment contracts and thus are not governed by securities laws. The test for whether an agreement constitutes an "investment contract" for purposes of federal securities laws involves two inquiries: (i) whether the investor is investing in a "common enterprise" and (ii) whether the investor is led to expect profits "solely from the efforts of the promoter or a third party." *S.E.C. v. W.J. Howey Co.*, 328 U.S. 293, 298-99 (1946); *United Hous. Found., Inc. v. Forman*, 421 U.S. 837, 852 (1975).  Moreover, where the primary motivation for purchasing a condominium is personal use, "the securities laws do not apply." *Forman*, 421 U.S. at 852-3.

Plaintiffs must plead facts sufficient to meet both prongs of the *Howey* test to avoid dismissal of their purported securities claims.  Additionally, the S.E.C. guidelines, which address the applicability of the federal securities laws with respect to sales of condominium units, state:

---

[10]     Courts "may consider a document attached to a motion to dismiss without converting the motion into one for summary judgment if the attached document is (1) central to the plaintiff's claim and (2) undisputed." *Day v. Taylor*, 400 F. 3d 1272, 1276 (11th Cir. 2005).

> If the condominiums are not offered and sold with emphasis on the economic benefits to the purchaser to be derived from the managerial efforts of others, and assuming that no plan to avoid the registration requirements of the Securities Act is involved, an owner of a condominium unit may, after purchasing his unit, enter into a non-pooled rental arrangement with an agent not designated or required to be used as a condition to the purchase, whether or not such agent is affiliated with the offeror, without causing a sale of a security to be involved in the sale of the unit. Further a continuing affiliation between the developers or promoters of a project and the project by reason of maintenance arrangements does not make the unit a security.

*Guidelines as to the Applicability of the Fed. Sec. Laws to Offers and Sales of Condos. or Units in a Real Estate Dev.*, Release No. 33-5347, 1973 WL 158443, at *3 (1973). These S.E.C. guidelines clarify the circumstances in which the sale of units are *not* deemed to be a security.

Here, Plaintiffs have failed to plead that they expressly entered into the purchase agreements with an expectation of profits **"solely from the efforts of" Defendants**. The Purchase Agreements attached to the Amended Complaint do not emphasize the investment value of the units, nor do Plaintiffs allege that they were not purchasing the units for personal use. Furthermore, "[u]nder the definition of 'investment contract' as developed by the Court in *Howey* and *Forman,* the sale of a condominium generally would not involve an investment contract." *Bender v. Cont'l Towers Lt. P'ship*, 632 F. Supp. 492, 500 (S.D. N.Y. 1986). Only when a purchaser is "drawn in by an expectation of appreciation in value" rather than an expectation of profits "solely from the efforts of a promoter or a third party" would an "investment contract" be established. *Id.; Garcia v. Santa Maria Resort, Inc.*, 528 F. Supp. 2d 1283 (finding that the purchase contracts did not constitute investment contracts and, as a result, federal securities laws were inapplicable where the contracts did not emphasize investment value and the purchasers confirmed there was no expectation of profit). Here, No such allegations have been plead and, as such, Count II should be dismissed.

    C.    **Count II should also be dismissed because Plaintiffs have failed to plead facts to establish that all Defendants participated in the control of Newland.**

In addition, Count II should be dismissed because the complaint fails to specify how **each** of the individual Defendants participated in the alleged failure to register the alleged "investment contracts." Plaintiffs' allegations that Roger Khafif "as president and shareholder. . . .had the managerial power to control or influence the policy. . . .of Newland," that Donald Trump "as contract partner. . .and as a well recognized developer had the ability to influence directly or indirectly influence the policy and decision making process of Newland," that the Trump

Organization "through Donald Trump had the ability to influence" Newland, are insufficient to establish controlling person liability. Am. Compl. ¶¶ 76-78.

To state a prima facie case of control person liability, the plaintiff must establish (1) a primary violation of the securities laws and (2) control over the primary violator by the alleged controlling person. *Maher*, 144 F. 3d at 1304; *Mizzaro v. Home Depot., Inc.*, 544 F.3d 1230 (11th Cir. 2008). Plaintiffs must establish that Defendants actually participated in the operations of Newland. *See Sanders Confectionery Prods., Inc. v. Heller Fin., Inc.*, 973 F. 2d 474, 486 (6th Cir. 1992)("plaintiff needs to establish that the defendant ... actually participated in (i.e., exercised control over) the operations of the [primary violator] in general and that the defendant possessed the power to control the specific transaction or activity upon which the primary violation is predicated."). A defendant is not subject to control person liability simply because he is an officer or director of a corporation. Rather, the plaintiff must make a showing that the defendant "had power, directly or indirectly, to influence the policy and decision making process of the one who violated the act, such as through nership of voting stock, by contract or through managerial power." *In re Sahlen & Assoc.'s Inc.*, 773 F.Supp. 342, 362 (S.D. Fla. 1991).

Here, not only have Plaintiffs failed to plead any of the Defendants actually participated in the operations of Newland, but Plaintiffs' factual allegations do not support such a showing. Plaintiffs make a few bare assertions, for example, that Roger Khafif as "president" and Donald Trump as "contract partner" and the Trump Organization "through Donald Trump" had the ability to influence Newland causing it to "engage in acts which give rise to liability under 15 U.S.C. 77e." Am. Compl. ¶¶ 76-78, 81. But Plaintiffs fail to plead any facts in support of those conclusory assertions, and have not stated what specific acts demonstrate their ability to control Newland. *Sahlen*, 773 F. Supp. at 363; *Bruhl v. Price Waterhousecoopers Intern*, 2007 WL 983263, at *10-11 (S.D. Fla. 2007) (maintaining that a complaint that merely restates the legal standard for control person liability, without providing facts in support of the allegation, does not adequately plead control person liability). Accordingly, Plaintiffs failed to state a claim for controlling person liability against Defendants and thus Count II should be dismissed.

## IV.   Count III Should Be Dismissed Pursuant To Fed. R. Civ. P. 12(b)(6) Because Plaintiffs Failed To State A Claim Under RICO.

### A.   Plaintiffs' RICO Claim Should Be Dismissed Because it is Barred as a Matter of Law.

Plaintiffs' RICO claim in Count III fails as a matter of law because the alleged fraudulent enterprise and the impact of that predicate activity both were entirely foreign.

Plaintiffs' RICO claim (and the Amended Complaint) is based on events that mainly took place in Panama and Russia. *See* Am. Compl., Count III.

Courts have previously held that RICO only has extraterritorial application if conduct **material** to the completion of the racketeering occurs in the United States, or if **significant effects** of the racketeering are felt here. *Liquidation Com'n of Banco International, S.A. v. Renta*, 530 F.3d 1339 (11th Cir. 2008). Under the conduct test, courts generally only:

> entertain suits by aliens only where conduct material to the completion of the fraud occurred in the United States. Mere preparatory activities, and conduct far removed from the consummation of the fraud, will not suffice to establish jurisdiction. Only where conduct "within the United States directly caused" the loss will a district court have jurisdiction over suits by foreigners who have lost money through sales abroad.

*Itoba Ltd. v. Lep Group PLC*, 54 F.3d 118, 121-22 (2d Cir.1995), *cert. denied*, 516 U.S. 1044, 116 S.Ct. 702, 133 L.Ed.2d 659 (1996). Here, Plaintiffs have failed to allege that conduct essential to the alleged fraudulent scheme occurred in the United States. At most, Plaintiffs allege a single meeting was conducted in Palm Beach County, which occurred **after** the initial purchase contracts were signed. *See* Am. Compl. ¶ 53; *Norex v. Petroleum Ltd. v. Access Industries, Inc.*, 2010 WL 4968691, at *3 (2d Cir. 2010) ("Simply alleging that some domestic conduct occurred cannot support a claim of domestic application."). Plaintiffs' other allegations fail to provide any detail whatsoever regarding where various meetings and representations were made for the purchase of property in Panama and, thus, fail to establish the activity was not entirely foreign activity. *See, e.g.,* Am. Compl. ¶¶ 44, 48-49, 60-63. The allegations that are plead in the Amended Complaint relate to meetings and discussions held in Moscow, Russia or Panama. *Id.* at ¶¶ 52, 96.

Moreover, Plaintiffs do not allege an injury was incurred in the United States. Plaintiffs, the majority of whom are Panamanian corporations, allege they were injured by way of a financial loss to property located in Panama through purported fraudulent activities and alleged misrepresentations communicated to Plaintiffs while in Russian or Panama. Am. Compl. ¶ 52. Thus, Plaintiff's RICO claim must be dismissed under Rule 12(b)(6).

**B.  Plaintiffs' RICO Claim Should Be Dismissed Because Plaintiffs Failed to Adequately Plead a Violation of the RICO Act.**

To survive a Rule 12(b)(6) Motion to Dismiss,  Plaintiff must at least allege the following: "(1) conduct, (2) of an enterprise, (3) through a pattern, (4) of racketeering activity."

*Williams v. Mohawk*, 465 F.3d 1277, 1282 (11th Cir. 2006). Each of these elements "carries its own inherent requirements of particularity." *Acosta v. Campbell*, 2006 WL 146208, *7 (M.D. Fla. Jan. 18, 2006). A plaintiff who seeks to allege a RICO claim must specifically identify, and factually plead, each element of a viable RICO claim. *See Rentclub, Inc. v. TransAmerica Rental Fin. Corp.*, 775 F. Supp. 1460 (M.D. Fla. 1991). The requirement of asserting clear and understandable allegations falls squarely on Plaintiffs, who cannot avoid that obligation by filing a confusing complaint that requires the Court or the Defendants to piece together the allegations. *Old time Enterprises v. Int'l Coffee Corp.*, 862 F.2d 1213, 1218 (5th Cir. 1989) (granting a motion to dismiss because Plaintiff "did not state a RICO claim against defendants with sufficient intelligibility for a court or opposing party to understand whether a valid claim is alleged and if so what it is."). Here, as set forth more fully below, Plaintiffs have not alleged the requisite elements of a RICO claim with the required specificity and, accordingly, it should be dismissed for failure to state a claim.

> **1.   Plaintiffs failed to adequately plead with particularity their fraud-based predicate acts as required by Rule 9(b).**

First, to avoid dismissal for failure to state a claim, a plaintiff must articulate how each defendant engaged in a prohibited pattern of racketeering activity or "predicate act." *Strategic Income Fund, LLC v. Spear, Leeds & Kellogg Corp.*, 205 F.3d 1293, 1296 (11th Cir. 2002). Plaintiffs failed to adequately plead the alleged predicate acts as to each of the Defendants.

All of the predicate acts, are, at their core, allegations of fraudulent behavior. In the Amended Complaint, Plaintiffs allege the following: "Defendants. . . .executed this scheme and artifice to defraud by causing matters to be mailed and delivered to the U.S. Postal Service and by causing sounds to be transmitted by wires," Am. Compl. ¶ 84, "Defendants committed, among others, the following acts of mail fraud. . . .and wire fraud. . . .each of which constituted 'racketeering activity,'" Am. Compl. ¶ 85, " . . . .Defendants participated in the scheme to defraud the Plaintiffs of money by use of the mail." Am. Compl. ¶ 86

Examining the four corners of the Amended Complaint, Plaintiffs' allegations are fundamentally grounded in fraud. Therefore, "Rule 9(b) applies and the predicate acts alleged must be pleaded with particularity." *Williams v. WMX Techs.,Inc.*, 112 F.3d 175,177 (5th Cir. 1997); Fed. R. Civ. P. 9(b) ("In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."). To satisfy the pleading requirements of Rule 9(b) the complaint must state: (1) precisely what statements were made in what documents

or oral representations or what omissions were made, and (2) the **time** and **place** of each such statement and the **person responsible** for making (or, in the case of omissions, not making) same, and (3) the **content** of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud. *States ex rel. Clausen v. Lab. Corp. of America, Inc.*, 290 F.3d 1301, 1310 (11th Cir. 2002) (listing the requirements needed in a complaint for mail and wire fraud); *Brooks*, 116 F.3d 1364, 1381 (11th Cir. 1997).

Plaintiffs' Amended Complaint falls far short of these standards and merely contains general allegations of fraud that fail to specify the exact statements made by Donald Trump, The Trump Organization, and Roger Khafif.  Plaintiffs' Amended Complaint also fails to include the contents of the purported fraudulent mail and wire communications (and certainly fails to attach any of the purported fraudulent communications to the complaint). *See, e.g.,* Am. Compl. ¶¶ 87-89 (failing to specify the contents of the promotional materials, how they were fraudulent, who mailed them, how the statements were fraudulent); ¶ 95 (failing to specify which Defendants were involved in the purported conversations between Panama and the U.S), ¶¶ 96-99 (failing to specify the contents of the communications). Moreover, to the extent that Plaintiffs' allegations of fraud are grounded on Defendants' purported representations that they would "provide financing for the remaining 70%" of the purchase price, the plain language of the Purchase Agreements expressly negates Plaintiffs' assertion and, accordingly, Plaintiffs cannot state a claim for fraud on this basis. *See* Purchase Agreements, ¶6(a)(iv) ("PROMISSOR BUYER's obligations hereunder are not conditional upon his/her ability to obtain credit or financing.").

In the absence of any other supporting facts, Count III is simply insufficient to plead a RICO claim and must be dismissed. *Tel-Phonic Servs., Inc. v. TBS Int'l, Inc.*, 975 F.2d 1134, 1138 (5th Cir. 1992) (affirming dismissal where fraud allegations did not include contents of the communications).[11]

> **2.   Plaintiffs' RICO claim should be dismissed because Plaintiffs failed to sufficiently plead a cognizable RICO enterprise.**

To avoid dismissal for failure to state a claim, a plaintiff must plead specific facts, not mere conclusions, to establish the existence of a RICO enterprise. *United States v. Bledsoe*, 674

---

[11]   Alternatively, Defendants request, pursuant to Rule 12(e), that the Court order Plaintiffs to submit a RICO Case Statement specifying facts upon which they will rely, the specific predicate acts and RICO violations they will seek to prove against each Defendant. Fed. R. Civ. P. 12(e) ("A party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response.").

F.2d 647, 664-65 (8th Cir. 1982).   A plaintiff is required to state its allegations "with enough clarity to enable a court or opposing party to determine whether or not a claim is alleged. *Elliot*, 867 F.2d at 880-81 (affirming dismissal of RICO claims where the complaint did not identify how defendant acquired control of a named enterprise by means of racketeering activity).

Count III clearly fails in this regard. Plaintiffs' Amended Complaint simply muddles all defendants into an "enterprise" without including facts to support the creation of an "enterprise." For example, Plaintiffs allege both that "the enterprise arguably was and is Newland International, alternatively, the four defendants constitute the enterprise." Am. Compl. ¶ 99. Plaintiffs are required to plead the actual enterprise and the facts supporting the allegation, and not leave it to the Court or Defendants to speculate about the enterprise.

Additionally, Plaintiffs must show that each one of the Defendants conducted the affairs of the "fraudulent scheme." *See Reyes v. Ernst & Young*, 507 U.S. 170, 185 (1993) (reasoning that to conduct or participate in the conduct of an enterprise's affairs, one must participate in the operation or management of the enterprise itself).   While Plaintiffs allege some conclusory allegations regarding Roger Khafif's conduct on behalf of Newland, which allegations are insufficient to establish that Roger Khafif conducted affairs of a fraudulent scheme, Plaintiffs' Amended Complaint is completely devoid of facts sufficient to show that Donald Trump and The Trump Organization were conducting the affairs of a "fraudulent scheme." Instead, Plaintiffs improperly plead in a conclusory fashion that "all Defendants are direct participants in the affairs of the enterprise," and, in doing so, Plaintiffs fail to state any facts sufficient to state a RICO claim. Am. Compl. ¶ 99.   Plaintiffs' allegations lack any facts demonstrating that Donald Trump, The Trump Organization, and Roger Khafif **conducted** or **managed the affairs** of the enterprises and the lack of these facts renders Count III subject to dismissal. *See Goren v. New Vision Int'l, Inc.*, 156 F.3d 721, 727 (7th Cir. 1998) ("Mere participation in the activities of the enterprise is insufficient; the defendant must participate in the operation or management of the enterprise."); *see also Reves*, 507 U.S. at 185.

### 3.   Plaintiffs' RICO claim should be dismissed because Plaintiffs have failed to plead an "Investment Injury."

In Count III, Plaintiffs attempt to allege a violation of 18 U.S.C. § 1962(a).  Am. Compl. ¶¶ 103, 109.  Most courts require a plaintiff asserting a Section 1962 (a) claim to allege an injury from the investment of racketeering income - an investment injury - as opposed to an injury

resulting from the commission of the predicate acts themselves.[12] The reinvestment of racketeering proceeds back into the enterprise is insufficient, as injury from "racketeering proceeds [which] are merely reinvested back into the same RICO enterprise. . . .derive proximately not from the investment but rather from the predicate acts themselves." *Lockheed Martin Corp. v. Boeing Co.*, 357 F. Supp. 2d 1350, 1370-71 (M.D. Fla. 2005). Courts within this district have adopted the majority approach, requiring that the plaintiff show "a causal nexus between the investment or use of the racketeering income and the plaintiff's injury." *In re Sahlen & Assoc., Inc. Secs. Litig.*, 773 F. Supp. 342, 367 (S.D. Fla. 1991) ("[T]his Court concludes that those courts requiring a causal nexus between the investment or use of the racketeering income and the plaintiffs injury adopt the preferable view."); *Super Vision Int'l, Inc. v. Mega Intern. Commercial Bank Co., Ltd*, 534 F. Supp. 2d 1326, 1342 (S.D. Fla. 2008) ("I conclude that the Eleventh Circuit would likely follow the rulings of the majority of circuits and require that the plaintiff in a civil RICO action under § 1962(a) show an injury resulting from the investment of racketeering proceeds.").

Here, Plaintiffs only allege that Defendants "received the income directly from the pattern of racketeering activity and used the income or its proceeds to operate the enterprise" Am. Compl. ¶ 103. Plaintiffs do not allege that they were injured by this alleged investment; rather, they only allege that they purportedly will lose their deposits if they do not close on the purchase of their units. Am. Compl. ¶ 110. Accordingly, dismissal of Count III is appropriate.

**V.**    **Plaintiffs' ILSA Claims In Counts IV And V Should Be Dismissed Pursuant To Fed. R. Civ. P. 12(b)(6).**[13]

To the extent this Court does not dismiss Plaintiffs' ILSA claims pursuant to the choice of law provision in the Purchase Agreements, Counts IV and V should be still be dismissed pursuant to Rule 12(b)(6) because some of those claims are time barred.

---

[12]   *See, e.g., Fogie v. THORN Americas, Inc.*, 190 F.3d 889, 896 (8th Cir. 1999) ("RICO gives only individuals who have suffered injury from the use or investment of racketeering income standing to bring a civil suit under §§ 1962(a) and 1964(c)"); *Nolen v. Nucentrix Broadbank Networks Inc.*, 293 F.3d 926, 929 (5th Cir. 2002)("For claims arising under § 1962(a), alleging an injury solely from the predicate racketeering acts themselves is not sufficient because § 1962(a) does not prohibit those acts. Instead, any injury must flow from the use or investment of racketeering income.").

[13]   Confusingly, Counts IV and V fail to mention *any* Defendants, including Newland, in the *ad damnum* clause, but contain allegations regarding all Defendants. To the extent this Court finds Counts IV and V are asserted against all Defendants, these claims should be dismissed for the reasons set forth below.

1. **Counts IV, IX, XIX, XXIV, XXIX, XXIV, XXXIX, XLIV, LIX, LXIX, CXXXIX, CXLIV, CXLIX, CLIV, CLIX, CLIV, CLXIX, and CLXIX for a violation of ILSA § 1703(a)(1)(C) are time barred.**

Plaintiffs claim that alleged "untrue statements" made by Defendants were a scheme to defraud Plaintiffs to purchase units in the Development and thus violated ILSA § 1703(a)(1)(C). Even assuming ILSA applies to the transaction at issue, which Defendants deny, Count IV is legally insufficient because the claim was filed after ILSA's limitations period. A claim under § 1703(a)(1)(C) must be brought within "three years after the date of signing of the contract of sale or lease." 15 U.S.C. § 1711(a)(1). The instant lawsuit was filed on November 12, 2010 and, therefore, all purchase agreements that were signed prior to November 12, 2007 are subject to dismissal as a matter of law. As set forth in the chart above on pages 14 to 15, twenty-two (22) of the Purchase Agreements were signed by purchasers prior to November 12, 2007 and thus a claim based upon ILSA § 1703(a)(1)(C) fails as to those purchasers. Accordingly, this Court should dismiss Counts IV, IX, XIX, XXIV, XXIX, XXIV, XXXIX, XLIV, LIX, LXIX, CXXXIX, CXLIV, CXLIX, CLIV, CLIX, CLIV, CLXIX, and CLXIX as a matter of law.

2. **Counts V, X, XX, XXV, XXX, XXXV, XL, XLV, LX, LXX, LXXXV, CXL, CXL, CL, CLV, CLX CLXV, CLXX, and CLXXV for a violation of ILSA § 1703(a)(1)(B) for Defendants' purported failure to provide a property report are time barred.**

In Count V, Plaintiffs seek rescission of their Purchase Agreements based solely upon Defendants' failure to provide a Property Report as required by the ILSA. Am. Compl. ¶¶ 129-136. Even assuming ILSA applies to the transactions at issue, which Defendants deny, Plaintiffs' claims must be dismissed as a result of the Plaintiffs' failure to give notice of their intent to exercise their right to rescind within the two-year period set forth in § 1703(c).

Although, under the ILSA, it is unlawful for a developer of a non-exempt lot to, among other things, sell or lease a lot in a subdivision "unless a printed property report ... has been furnished to the purchaser" in advance of his signing a contract for such purchase, *see* 15 U.S.C.§ 1703(a)(1)(B), there can be no cause of action when Plaintiffs failed to give notice to rescind within two years of signing the purchase agreements. *Id.* § 1703(c). The statute provides:

> [i]n the case of any contract or agreement for the sale or lease of a [non-exempt] lot for which a property report is required by this chapter and the property report has not been given to the purchaser or lessee in advance of his or her signing such contract or agreement, such contract or agreement *may be revoked at the option of the purchaser or lessee within two years from the date of such signing, and such contract or agreement shall clearly provide this right.*

*Id.* § 1703(c) (emphasis added).

ILSA require a purchaser to exercise the right of rescission for a developer's failure to provide a property report within two years of signing the contract. 15 U.S.C. §§ 1703(c), (d). *See Bush v. Bahia Sun Assoc., L.P.,* 2009 WL 963133, *9-13 (M.D. Fla. Apr. 8, 2009); *Tait v. 430 Hibiscus, L.P.,* 2009 WL 455439, *2-3 (S.D. Fla. Feb. 23, 2009); *Taylor v. Holiday Isle, LLC,* 561 F. Supp.2d 1269, 1273-1275, and n. 7 (S.D. Ala. 2008); *Ditthardt v. North Ocean Condos, L.P.,* 2008 WL 2741114, *3 (S.D. Fla. July 11, 2008)

The instant lawsuit was filed on November 12, 2010 and thus any purchasers that entered into their contracts prior to November 12, 2008 cannot state a claim under ILSA 1703(a)(1)(B). As set forth in the chart above on pages 14 to 15, twenty-three (23) Purchase Agreements were signed prior to November 12, 2008 thus a claim based upon ILSA § 1703(a)(1)(B) fails for those purchasers. Accordingly, this Court should dismiss Counts V, X, XX, XXV, XXX, XXXV, XL, XLV, LX, LXX, LXXXV, CXL, CXL, CL, CLV, CLX CLXV, CLXX, and CLXXV as a matter of law.

### 3.     Plaintiffs' ILSA claims should be dismissed as to Defendant Donald Trump and The Trump Organization because Plaintiffs failed to establish that Donald Trump and The Trump Organization are agents of Newland.

To qualify for ILSA protection, a plaintiff must show that he or she purchased a lot from a defendant who qualifies as a developer or developer's agent under ILSA. ILSA defines a developer as "any person who, directly or indirectly, sells or leases, or offers to sell or lease, or advertises for sale or lease any lots in a subdivision." 15 U.S.C. § 1701(5). The Act defines an agent as "any person who represents, or acts for or on behalf of, a developer in selling or leasing, or offering to sell or lease any lot or lots in a subdivision." 15 U.S.C. § 1701(6). ILSA causes of action are, nevertheless, limited to defendants who are involved in the sales process.

Here, the plain language of the Purchase Agreements reflect that Newland is the developer and seller of the units. *See* Exhibit Nos. 1 - 42 [D.E. # 6-10, 13]. Further, the Purchase Agreements reflect that the only signatories to the Purchase Agreements were Newland and the purchasers. *Id.* Moreover, Plaintiffs have not alleged that Donald Trump or The Trump Organization were involved in the actual sales of units of the development or that they were officers of Newland. *See United States v. Cost Control Mktg. Sales Mgmt. of Virginia,* Inc., 64 F.3d 920, 925 (4th Cir. 1995) (involving defendants who sold lots to the plaintiffs); *Fuls v. Shastina Prop., Inc.,* 448 F.Supp. 983, 990 (N.D.Ca.1978) (involving developer and seller who sold lots); *Zachary v. Treasure Lake of Ga., Inc.,* 374 F.Supp. 251 (N.D.Ga.1974) (holding that

plaintiffs' dealings in the purchase of the lots were not with the defendants and thus neither of the defendants were developers or agents under the ILSA). Thus, to the extent Plaintiffs have attempted to assert ILSA claims against Donald Trump or The Trump Organization, those claims should be dismissed because Plaintiffs have failed to allege and, based on the plain language of the purchase contracts, cannot allege that they participated in the sales of the units.

**VI.**  **The Amended Complaint Should Be Dismissed As To Defendants Donald Trump And Roger Khafif Because Plaintiffs Failed To State A Claim Against Either Defendant In Their Individual Capacities.**

Plaintiffs allege that Donald Trump an individual, is a contract partner of Roger Khafif. Am. Compl. ¶¶76-78. Plaintiffs also allege that Donald Trump and Roger Khafif as individuals bear responsibility for the alleged misrepresentations and omissions in the advertising and promotional materials by Newland. *Id.* at ¶85. First, Plaintiffs' claims fail because there are no factual allegations to establish that Donald Trump individually is a developer of the Condominium. To the contrary, the documents attached as exhibits to the Amended Complaint identify only Newland as the developer. *See* Exhibit Nos. 1 - 42 [D.E. # 6-10, 13]. Second, there are no factual allegations in the Amended Complaint that Donald Trump or Roger Khafif acted outside their corporate capacity on behalf of The Trump Organization or Newland, respectively.

It is well settled that those who do business in the corporate form have a right to rely on the rules of law which protect them against personal liability, unless it is shown that the corporation is formed for some illegal, fraudulent or other unjust purpose which justifies piercing of the corporate veil. *Dania Jai-Alai Palance, Inc. v. Skyes*, 450 So. 2d 114 (Fla. 1984). The mere fact that a corporation, through its board of directors, approves a transaction which it should have reason to believe is illegal, does not of itself bring personal liability on the president of the corporation. *Alliegro v. Pan American Bank of Miami*, 136 So. 2d 656, 665 (Fla. 3d DCA 1962). Plaintiffs' Amended Complaint fails to allege how Donald Trump and Roger Khafif, as individuals, bear any liability for the counts alleged in the Amended Complaint and do not allege and cannot allege that the Trump Organization or Newland were formed for some an illegal or fraudulent purpose which would justify piercing the corporate veil. Accordingly, Donald Trump and Roger Khafif should be dismissed from the Amended Complaint with prejudice.

WHEREFORE, Defendants respectfully request that this Court dismiss Plaintiffs' Amended Complaint and grant such other and further relief as this Court deems just and proper.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on February 24, 2010, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:  Roderick F. Coleman, Esq. and Cory S. Carano, Esq., Coleman & Associate, P.A., 400 S. Dixie Highway, Suite 121, Boca Raton, FL 33432.

Herman J. Russomanno, Esq.
Robert J. Borrello, Esq.
Herman J. Russomanno III, Esq.
RUSSOMANNO & BORRELLO, P.A.
Museum Tower – Penthouse 2800
150 West Flagler Street
Miami, Florida 33130
Telephone: (305) 373-2101
Facsimile: (305) 373-2103

*Co-Counsel for Defendants Donald Trump
and The Trump Organization*

GREENBERG TRAURIG, PA
777 South Flagler Drive, Suite 300E
West Palm Beach, FL 33401
Telephone: (561) 650-7900
Facsimile: (561)655-6222

By: /s/ Mark F. Bideau
    Mark F. Bideau, Esq.
    bideaum@gtlaw.com
    Florida Bar No.  564044
    Andrea Shwayri, Esq.
    shwayria@gtlaw.com
    Florida Bar. No. 0051566

*Counsel for Defendants Roger Khafif,
Donald Trump, and The Trump
Organization*

*WPB 382,439,379 2 999903.000016*