UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Palm Beach Division
Case No.: 10-cv-81466-WPD

GREG LANDAU, et al.,

        Plaintiffs,

v.

NEWLAND INTERNATIONAL PROPERTIES, CORP.;
ROGER KHAFIF; THE TRUMP ORGANIZATION;
DONALD TRUMP, individually,

        Defendants.
_____/

## PLAINTIFFS' RESPONSE IN OPPOSITION TO MOTION TO DISMISS

Plaintiffs, Greg Landau et al. (hereinafter "Plaintiffs"), by and though undersigned counsel, hereby file this Response in Opposition to Defendants' Motion to Dismiss and state as follows:

### I. Background

Plaintiffs seek to rescind purchase contracts for condominiums in Panama which were agreed upon as a result of numerous misrepresentations by Defendants. If not for Defendants misrepresentations regarding, at a minimum, (1) Plaintiffs' ability to obtain 70% financing from Defendants; (2) the location of the Trump Ocean Club; and (3) the existence of a Trump branded Casino, Plaintiffs would not have agreed to purchase these units.

In effort to rescind the purchases of these fraudulently-offered properties, Plaintiffs have brought actions against Defendants Roger Khafif (hereinafter "Khafif"), the Trump Organization (hereinafter "TC"), Donald Trump (hereinafter "Trump"), and Newland International Properties,

1

Racketeering Influence Corruption Act. Defendants Khafif, TC and Trump have been served, but Newland has not yet been served due to the difficulty of perfecting services in Panama. Considering Newland is expected to join in this motion once it is service is perfected, Plaintiffs have addressed Defendants arguments as if Newland was also a party to the motion.

In the following memorandum, Plaintiffs address the arguments presented by Defendants in their Motion to Dismiss and further seek leave to amend to rectify those issues which bear correction. Plaintiffs first address claims regarding the forum selection clause, followed by sections discussing the Securities Act, the Racketeering Influence Corruption Act (hereinafter "RICO") and the Interstate Land Sales Act (hereinafter "ILSA"), in that order.

## II. Forum Selection Clause unreasonable under the Bremen test

As this court is well aware, *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10, 92 S. Ct. 1907, 32 L. Ed. 2d 513 (1972) holds that forum selection clauses in international contracts are presumed to be valid and enforceable. *Bremen* further explains that to overcome that presumption the moving party must establish either: (1) the formation of the clause was induced by fraud or overreaching; (2) the plaintiff effectively would be deprived of its day in court because of the inconvenience or unfairness of the chosen forum; (3) the fundamental unfairness of the chosen law would deprive the plaintiff of a remedy; or (4) enforcement of such provisions would contravene a strong public policy. *See Id.* Plaintiffs contend that numbers 2, 3 and 4 apply to the subject forum selection clause and that it must be invalidated.

### a. Plaintiff effectively would be deprived of its day in court because of the unfairness of the chosen forum

This circuit has held that to invalidate a forum selection clause under the second prong, the remedies available in the chosen forum must be so inadequate that enforcement would be fundamentally unfair. *See Lipcon v. Underwriters at Lloyd's London*, 148 F.3d 1285, 1297 (11th

Cir. 1998), *Gonzalez v. Watermark Realty Inc.*, 2010 U.S. Dist. LEXIS 31039 (S.D. Fla. Mar. 30, 2010). If forced to litigate this case in Panama, Plaintiffs will not have their day in court due to the corrupt nature of Panama's courts. A quick Google search of the phrase "Panama court corruption" results in countless newspaper articles detailing the corruption of the Panama legal system.[1] As recently as March 17, 2011, the American Embassy accused the Panama Supreme Court of taking bribes.[2] This same article boldly states "[f]or the US diplomats, there were almost no doubts that the entity is "steeped in corruption" due to the actions of its judges."[3]

Plaintiffs attach hereto the affidavit of Miguel Bernal (Exhibit C), a prominent Panamanian attorney and Professor at the University of Panama for the past twenty years. The affidavit discusses Mr. Bernal's personal knowledge regarding the May 13, 2010 removal of a judge from the Superior Tribunal level because he was selling pardons for $100,000.00, the magistrate of the Supreme Court of Panama who had his visa to the United States canceled for corruption, and the still sitting judge who has received more than 30 complaints regarding corruption yet no action has been taken against him. Mr. Bernal further states that it is his professional and experienced opinion that Plaintiffs will not obtain a fair trial in Panama.

As even further evidence of Panama's corruption, Plaintiffs include an article from the Council on Hemispheric Affairs titled, "Hungry for Justice: Corrupt Courts in Panama deny

---

[1] Here are a sample of such articles, all of which are attached hereto as Exhibit A: Corruption in the highest levels of the judiciary: former Attorney General. Newsroom Panama, April 5, 2011. http://www.newsroompanama.com/panama/2591-corruption-in-the-highest-levels-of-the-judiciary-former-attorney-general.html; US ambassador criticizes Panama's court corruption. The Panama News, August 6-19, 2006. http://www.thepanamanews.com/pn/v_12/issue_15/news_04.html; Spadafora's moves against the press put high court corruption at center stage. The Panama News, August 23-September 5, 2005. http://www.thepanamanews.com/pn/v_11/issue_16/news_01.html; Formalities serve no good purpose when the Supreme Court supports corruption. The Panama News, May 22-June 4, 2005. http://www.thepanamanews.com/pn/v_11/issue_10/editorial.html;
[2] US Embassy Reported Bribery of Panamanian Supreme Court in 2004. The Panama-guide.com, March 17, 2011. http://www.panama-guide.com/article.php/20110317111048229. Attached hereto as Exhibit B.
[3] *Id.*

Impoverished Children $50 Million in Inheritance" (attached hereto as Exhibit D).[4] This article details additional examples of corruption of the courts throughout Panama's history and further states "the judiciary received a rating of 4.5 from Panamanian citizens, with '1' being 'not corrupt at all' and '5' being 'extremely corrupt.'"[5]

In light of the real and serious threat of corruption within the courts of Panama, the remedies from the chosen forum must be considered so inadequate that enforcement would be fundamentally unfair.[6] In addition, there is no guarantee that Plaintiffs will be able to obtain personal jurisdiction over Trump and TC as, without discovery, Plaintiffs do not know the extent Trump and TC availed themselves to the laws of Panama sufficient for jurisdiction. Therefore, under the *Bremen* test, this forum selection clause must be invalidated.

b. **Public policy prohibits finding the forum selection clause enforceable**

The anti-waiver provisions of RICO and ILSA bar Defendants' insertion of a forum selection clause which avoids RICO and ILSA regulation. Although a similar argument was proffered and denied in *Lipcon*, the facts *sub judice* are highly distinguishable and the anti-waiver provision trumps the forum selection clause.

In *Lipcon*, the defendant was a British insurance market and the plaintiffs were Americans who, as a condition precedent to contracting with the defendant, had to travel to England to acknowledge the attendant risks of participating with defendant by signing a

---

[4] Hungry for Justice: Corrupt Courts in Panama Deny. Council on Hemispheric Affairs, July 12, 2010. http://www.coha.org/hungry-for-justice-corrupt-courts-in-panama-deny-starving-children-50-million-in-inheritance.
[5] The article further explains that the corrupt nature of Panama is largely a result of its structure. The country's judiciary consists of a Supreme Court, four superior courts, eighteen circuit courts, and at least one municipal court per district. Nine Supreme Court magistrates, as well as their nine alternates, are appointed by the president for ten-year terms, pending approval by the legislative assembly. Unlike many other systems in the western hemisphere, in Panama, Supreme Court magistrates are responsible for appointing superior court judges who, in turn, appoint the circuit court judges. Therefore, because there is one continues connection from the lowest judge to the highest judge, one improperly influenced high ranking judge poisons the entire tree. Further, the appellate process becomes meaningless if the judges are connected.
[6] Although the recent case of *Cantley v. Ducharme*, 2011 U.S. Dist. LEXIS 14812 (S.D. Fla. Feb. 14, 2011) upheld a forum selection clause designating Panama as the chosen forum, the plaintiffs in that case failed to argue the rampant corruption of Panama as a basis to invalidate the clause.

standard-form "General Undertaking."  The General Undertaking included choice-of-forum and choice-of-law clauses.  After a dispute, the plaintiffs brought an action in the United States.  This court struggled with balancing the anti-waiver provisions of RICO with the presumption in favor of forum selection clauses in international agreements but ultimately held that the securities law's anti-waiver provisions could not categorically preclude enforcement of foreign choice of forum and law clauses because policy considerations supported the enforceability of the clauses under the Bremen test. *See Lipcon*, 148 F.3d at 1295, 1298-99.

In arriving at this conclusion, this Court stated:

> Though we do not deny that there is some force to appellants' argument that the anti-waiver provisions preclude application of the *Bremen* test, we believe that to invalidate the choice provisions for that reason in effect would be to conclude that "the reach of the United States securities laws [is] unbounded," *Richards*, 135 F.3d at 1293, and to ignore the Supreme Court's caveat that "we cannot have trade and commerce in world markets and international waters exclusively on our terms, governed by our laws, and resolved in our courts," *Bremen*, 407 U.S. at 9, 92 S. Ct. at 1913. Id. at 1295.

To summarize, the policy reasons behind the *Lipcon* ruling were ensuring that international contracts have one agreed upon forum to decide disputes and that American law does not dwarf the laws and rights of other countries and their citizens.  This was particularly important because plaintiffs traveled to defendant's locale to do business, thus defendant should have the right to defend the suit where it is situated

In the case *sub judice*, the policy reasons cited by *Lipcon* to support international forum selection clauses are inapplicable because this is not a true international agreement whereby the rights of foreign defendants are at stake.  Although the only Defendant named in the purchase contracts is foreign (Newland), the parties pulling its strings are all American citizens.  Khafif is an American citizen and Florida resident (*See* Return of Service attached hereto as Exhibit E, Am. Comp. ¶ 42).  Trump is obviously an American citizen.  TC is Trump's American

corporation. Unlike *Lipcon,* Plaintiffs did not travel to Panama to secure the transaction, but rather Newland traveled to America where it held a meeting in Palm Beach, Florida at Trump's Mara Lago Club to attract additional investors and fully secure present investors. Despite the illusion of the corporate veil of Newland, make no mistake this meeting was held by the three American defendants, Khafif, Trump and TC, in effort to attract American buyers.

The transaction at issue is more aptly described as a domestic agreement, or *quasi-international* agreement, because three of the Defendants behind the sale of these properties are American. The fourth Defendant is a Panama corporation that one of the American Defendants created (Khalif) as a corporate shell to sell the property. The other two American Defendants (Trump and TC) then partnered with this newly formed corporation to sell international properties marketed primarily in Florida. In the promotional brochures for the Trump Ocean Club provided to all investors, Trump admits to partnering with Khafif to produce this high-rise and that "[t]ogther we are proud that our creation has already become a landmark in Latin America and the Caribbean" (excerpt attached hereto as Exhibit F).

Therefore, Defendants included the forum selection clause not to select one forum which would handle international disputes, but rather to avoid the strict regulations of ILSA and RICO and their prohibitions against using fraudulent and/or misleading statements to attract investors. The anti-waiver provision of ILSA, 15 U.S.C. § 1712, which provides that "[a]ny condition, stipulation, or provision binding any person acquiring any lot in a subdivision to waive compliance with any provision of this chapter or of the rules and regulations of the Secretary shall be void," must apply here to bar these American salesmen from selling non-domestic properties with a forum selection clause which avoids ISLA.

The general applicability of ILSA to forum selection clauses was addressed in *Liles v. Ginn-La West End., Ltd.*, 631 F. 3d 1242 (11th Cir. 2011) wherein the middle district court of Florida stated[7]:

> "[w]ere this a domestic transaction, Plaintiffs' argument would be well taken. See e.g., Boyd v. Grand Trunk W. R.R. Co., 338 U.S. 263, 264-65, 70 S. Ct. 26, 94 L. Ed. 55 (1949) (per curiam); Thomas v. Rehab. Servs. of Columbus, Inc., 45 F. Supp. 2d 1375, 1379-81 (M.D. Ga. 1999). The argument is less persuasive, however, in the context of an international agreement…

The question thus becomes whether this type of agreement should be viewed in the context of an international agreement or a domestic agreement. ILSA was created to govern the marketing and sale of properties in the United States, regardless of whether the properties are domestic or foreign. *See* 15 U.S.C. § 1701(3). The anti-waiver provision within ILSA, 15 U.S.C. § 1712, exists purely to prevent enterprising salesmen from waiving ILSA provisions in contracts. **If American citizens need only create foreign shell corporations to sell their non-domestic properties, then the strength of ILSA's anti-waiver provision is obliterated**. The only American salesmen who would be subject to ILSA would be those uneducated on the relatively simple means to beat it. This would be a dangerous and damaging precedent to establish.

As stated earlier, Roger Khafif is a Florida resident. The three American Defendants, Khalif, Trump and TI, held a meeting in Palm Beach, Florida at Trump's Mara Lago Club, specifically to attract investors and encourage current investors to increase their deposits. By appearing in America to recruit buyers for their offshore properties, Defendants cannot deny that they have availed themselves of Florida law. Further, although not all the Plaintiffs are

---

[7] *Liles* is of questionable precedential value because it is a per curiam opinion. Further, as far as evident from the opinion, the plaintiffs in *Liles* failed to argue the extent of American involvement behind the development of the Bahamian corporation and/or that it should not qualify as a "truly international" agreement..

American citizens, each Plaintiff, or someone on their behalf, was present at the meeting in Mara Lago. Florida is thus the best forum because it ties all Plaintiffs and Defendants together.

The applicability of forum selection clauses is a case by case basis under the *Bremen* test. In this case, public policy does not support allowing these American salesmen from escaping ILSA merely because a corporate shell was used to sell the properties.

### c. The fundamental unfairness of the chosen law would deprive the plaintiff of a remedy

Panama does not have its own Interstate Land Sales Act ("ILSA"), Racketeering Influence Corruption Act ("RICO") or Securities Act of 1993 ("Securities") whereby Plaintiffs can bring their claims.[8] Therefore, the chosen forum of Panama would deprive Plaintiffs of what should be easily demonstrated fraudulent practices and misrepresentations by Defendants under the three acts. In particular, seventeen (17) of the transactions are entitled to immediate rescission under USC §1703(a)(1)(b) for the failure to issue a property report. There are no truly no defenses to this cause of action, thus seventeen injured Plaintiffs can be immediately remedied on summary judgment and removed from the case, enhancing judicial economy.

However, Plaintiffs are familiar with the holding of *Lipcon* wherein this district stated it "will not invalidate choice clauses … simply because the remedies available in the contractually chosen forum are less favorable than those available in courts of the United States. Instead, we will declare unenforceable choice clauses only when the remedies available in the chosen forum are so inadequate that enforcement would be fundamentally unfair." *Gonzalez v. Watermark Realty Inc.*, 2010 U.S. Dist. LEXIS 31039 (S.D. Fla. Mar. 30, 2010) (citing *Lipcon* at 1297).

If forced to proceed in Panama, Plaintiffs will be completely unable to obtain rescission for Newland's failure to produce a property report to Plaintiff in advance of Plaintiff executing

---

[8] See Affidavit of Miguel Bernal.

the agreement for sale, as required by the 15 U.S.C. § 1703(a)(1)(B). There are no causes of action in Panama which provide relief for the failure to provide a property report. This goes beyond merely *less favorable* laws into *no relief whatsoever* for the failure to provide a property report.

The same can be said for the Securities and RICO claims. These causes of action are non-existent in Panama. Panama has no action for control person liability.[9] Therefore, it is fundamentally unfair to strip Plaintiffs from all of their causes of action, particularly those where they are ensured a remedy.

### III.  Securities Fraud

#### A. 15 USC §77e and 15 USC §77o

In light of the statute of limitations defenses to 15 USC §77e, which would then usurp Plaintiffs' cause of action under 15 USC §77o, Plaintiffs request leave to amend to assert that the overall sale of the agreements, particularly delivery of the final constructed unit and not merely the purchase agreements, represent the unregistered sale of securities. This change will comply with the last pertinent activity test and defeat the statute of limitations issue. *See Doran v. Petroleum Mgmt.*, 576 F.2d 91, 93 (5th Cir. 1978). In addition, Plaintiffs wish to amend to include violations of 15 USC §77l(a)(2), which will support a cause of action for 15 USC §77o, and 15 USC §77q. Plaintiffs are within the statute of limitations to assert these new claims based upon the date of discovery of the violation in the summer of 2010. *See* Am. Compl. ¶ 60-63.

#### B. Plaintiffs plead sufficient allegations to support its Securities action

Contrary to Defendants' assertions, Plaintiffs plead in Am. Comp. ¶ 71 that profits were expected solely from the efforts of Newland and in ¶ 49 that Newland would line up purchasers for Plaintiffs' investments prior to closing, reaping substantial profits. Those statements,

---

[9] See Affidavit of Miguel Bernal.

9

coupled with Plaintiffs allegation in ¶ 45, 46 and 69 that a common enterprise existed satisfy the requirements of *S.E.C. v. W.J. Howey Co.,* 328 U.S. 293 (1946).

In addition, Defendants misconstrue the holding of *Bender v. Cont'l Towers Ltd. P'ship,* 632 F. Supp. 497, 500 (S.D.N.Y. 1986) to require Plaintiffs to plead profits by an expectation of "appreciation of value" in order to classify as an investment, when that case holds for the opposite proposition. *Bender* holds that securities must rely on profits solely from the efforts of Defendant and <u>not market forces</u>[10]. See *Garcia v. Santa Maria Resort, Inc.,* 528 F. Supp. 2d 1283, 1292 (S.D. Fla. 2007). Defendants also misconstrue *Garcia* to create an affirmative burden that Plaintiffs plead that they do not intend to use the units for personal use, when that case instead holds Plaintiffs who *do* plead that they intend to use the units for personal use are those which are barred from recovery. *Id.* at 1292.

Plaintiffs have properly plead the allegations necessary to support this cause of action and thus dismissal is not warranted.

### C. Plaintiffs properly plead facts which demonstrate Defendants controlled Newland

Defendants' argument that Plaintiffs did not plead sufficient facts to demonstrate Khafif and Trump controlled Newland is without merit. Plaintiffs plead: (1) in Am. Comp. ¶ 48 that "Khafif represented that if an investor put down 30% Newland international properties and/or the Trump Organization would manage the investment, provide financing for the remaining 70%, and arrange new buyers to purchase the units before closing was required,"; (2) in ¶ 49 that Khafif stated Newland International would line up new buyers for Landau's and his fellow investors property before construction of their unit was completed-netting substantial returns; (3) in ¶ 53 that Khafif and TC arranged for an investor meeting to take place in Florida; (4) in ¶ 54

---

[10] Emphasis added by Plaintiffs.

that Donald Trump was present at this meeting and heard Khafif's representations including the representation that the Trump Organization would provide 70% financing for all investors and further that Trump did not correct or negate any of these representations; (5) in ¶ 76 that "Khafif as president and shareholder of Newland International Properties had the managerial power to control or influence the policy and decision-making process of Newland international properties"; (6) in ¶ 77 that Donald Trump, as a "contract partner with Khafif and as a well recognized developer had the ability to influence directly or indirectly the policy and decision-making process of Newland International Properties"; and (7) in ¶ 64 that Trump represented in promotional literature for the purchase of Newland properties that "I am honored to develop this extraordinary high-rise with my partner Roger Khafif of the K Group."

    Defendants seem to imply that stating Khafif is *president* of Newland is somehow not a fact sufficient to demonstrate that he had control over the company. Regardless, Plaintiffs sufficiently plead other facts which demonstrate Khafif held a controlling role in the actions of Newland, and/or represented same to Plaintiffs. Further, Plaintiffs sufficiently alleged Trump's involvement in the decision making process by his own assertions that he is a partner in the operations and development of Newland and further that Trump was present at meetings where misrepresentations regarding financing and developments were made involving his company that he did not correct or negate. In light of all of these facts plead, Plaintiffs have sufficiently alleged facts which demonstrate Defendants controlled Newland.

## IV. RICO

### A. Acts which occurred in the United States.

Plaintiffs plead that Khafif approached Landau, but failed to state where that occurred. Plaintiffs seek leave to amend to include that this meeting occurred in Miami, Florida which establishes conduct material to the racketeering occurred in the United States.

### B. Plaintiffs sufficiently plead specific facts to support RICO

Defendants blanket assertion that Plaintiffs failed to allege facts to support RICO is without merit. Defendants ignore Am. Comp. ¶ 44-64 which are lead-in allegations which state specific facts relating to Defendants' misrepresentations regarding the existence of a Trump-branded casino[11], the availability of 70% financing[12], and the Beach Club's location[13]. These allegations include time periods to the best knowledge of Plaintiffs and the locations which they were made, i.e. orally at the Mara Lago meeting or through the promotional brochures. Therefore, Plaintiffs have sufficiently plead particular facts to support RICO. In the event this Court feels Plaintiffs have not plead sufficient facts, dismissal is inappropriate without first allowing Plaintiffs the opportunity to amend and supply additional facts.

### C. Plaintiffs plead facts sufficient to demonstrate an enterprise

Defendants state that Am. Comp. ¶ 99 is insufficient to demonstrate the creation of an enterprise because it states "the enterprise arguably was and is Newland International, alternatively, the four defendants constitute the enterprise." Other than standard case law regarding conclusory allegations, Defendants have not included any case law to demonstrate that Plaintiffs must state, with clear and lucid accuracy, exactly how the enterprise operates. Discovery will reveal the exact nature that these Defendants worked together to defraud

---

[11] *See* ¶ 55 and 63.
[12] *See* ¶ 44, 46, 48, 54 and 60.
[13] *See* ¶ 44, 45, 47, 61 and 64.

Plaintiffs, whether by the three Defendants (Khafif, Trump, TC) forming the fourth Defendant (Newland), or whether all four operated together. Plaintiffs know they were defrauded by the four Defendants and state allegations to support same, however, to require Plaintiffs to state the exact nature and involvement of every Defendant in the scheme at this juncture is premature.

Notwithstanding the above argument, Plaintiffs alleged Trump's involvement in the scheme in Am. Comp. ¶ 91[14] and ¶ 102[15], TC's involvement in ¶ 90[16] and ¶ 101[17], Khafif's numerous misrepresentations in the scheme throughout the entire Amended Complaint, and summarily stated in Am. Comp. ¶ 84 that "Defendants, Newland International, The Trump Organization, Roger Khafif, and Donald Trump executed this scheme and artifice to defraud by causing matters to be mailed and delivered by the U.S. Postal Service and by causing sounds to be transmitted by means of wire communications in interstate and foreign commerce in connection with Plaintiff's purchase agreement(s)."

In light of these numerous allegations regarding the scheme to defraud, Plaintiffs sufficiently plead allegations to demonstrate a violation of RICO.

**D. Investment injuries**

Although Plaintiffs stated in Am. Comp. ¶ 103 that all Defendants received income directly from the pattern of racketing activity and used the income to operate the enterprise, if this Court requires Plaintiffs to plead a more detailed "investment injury" as argued by

---

[14] Am. Comp. ¶ 91 states: "Donald Trump's participation involved the provision of false and misleading text to include in the promotional materials. The mailing of the promotional materials constituted criminal conduct by reason of the fact that the materials contained falsities and were placed in the mail which affected interstate and foreign commerce."
[15] Am. Comp. ¶ 102 states: Donald Trump personally provided false information to be included in the marketing materials including but not limited to the false information detailed in paragraph 64.
[16] Am. Comp. ¶ 90 states: "The Trump Organization's participation involved the approval of the promotional materials despite its knowledge of their falsity
[17] Am. Comp. ¶ 101 states: The Trump Organization was a direct participant in the affairs of the enterprise because The Trump Organization reviewed and approved the marketing materials even though it knew that the representations were false

Defendants then Plaintiffs seek leave to include facts regarding the 30% deposit being divided into 3 separate 10% deposits with which were used to continue the activities of the enterprise. The first 10% deposits received funded Defendants' methods to induce the Plaintiffs to pay the second and third deposits and ultimately close on the property.

In addition, the requirement of an investment injury only applies to 18 U.S.C. § 1962(a) while Plaintiffs brought actions under 18 U.S.C. § 1962(b) and 18 U.S.C. § 1962(c) as well.

## V. ILSA

### A. Statute of Limitations with regard to Count V and its progeny, violation of 15 U.S.C. § 1703(a)(1)(B)

Plaintiffs agree that some of the purchase agreements are subject to the two (2) year statute of limitations with regard to property reports. Not twenty-three (23) of them as Defendants declare, but rather only seventeen (17) of the present thirty-four (34) purchase agreements.

### B. Statute of Limitations with regard to Count IV and its progeny, violation of 15 U.S.C. § 1703(a)(2)(B)

Plaintiffs mistakenly titled Count IV and its progeny as a cause of action under 15 USC 1703(a)(1)(c). These allegations should be titled as a violation of 15 U.S.C. § 1703(a)(2)(B), as alluded to in Am. Comp. ¶ 115. 15 USC 1711(a)(2) governs violations of 15 USC 1703(a)(2)(b) and states that the three year statute of limitations begins upon discovery of the violation. Thus, if these causes of action were properly titled, they would not be time-barred. Plaintiffs seek leave to remedy this error, or will address this typo by interlineation.

### C. Trump and Trump Corporation subject to ILSA as agents

15 U.S.C. § 1703 defines "agents" as "any person who represents, or acts for or on behalf of, a developer in selling or leasing, or offering to sell or lease, any lot or lots in a subdivision…"

Trump and TC are agents liable under ILSA because they were involved in the sales process by offering 70% financing and advertising membership of the Trump Ocean Club. Trump and TC also appeared at the Mara Lago meeting to attract new investors and secure the current investors into closing. Therefore, Trump and TC are agents involved the sale of these properties subject to ILSA.

VI. **Khafif and Trump, individually**

Had Plaintiffs filed suit for breach of contract, Khafif and Trump could defend that they are merely officers of the developer and cite corporate veil arguments. Instead, Plaintiffs brought causes of action under the Securities Act[18], RICO[19] and ILSA[20], all of which support claims against persons or agents involved in the process.

VII. **Conclusion**

Having responded to Defendants' Motion to Dismiss and defeated the claims therein relating to venue, Plaintiffs now seek leave to amend to plead additional facts to support its causes of action and amend the title of its ILSA action.

WHEREFORE, Plaintiffs respectfully request that the Court deny Defendants' Motion to Dismiss as to venue, strike the forum selection clause as invalid, allow Plaintiffs leave to amend to plead additional facts and correct the title of their ILSA claim and award such additional relief as this Court deems appropriate.

**I HEREBY CERTIFY** that the foregoing was filed with the Clerk of Court on May 2, 2011 using CM/ECF system thereby serving users in this case.

/s/ *Roderick F. Coleman*
Roderick F. Coleman
FBN: 371270

---

[18] *See* 15 USC § 771.
[19] *See* 18 USC § 1962(c).
[20] *See* 15 USC § 1703