**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

CASE NO. 10-CV-81466-DIMITROULEAS/SNOW

GREG LANDAU, et al.,

        Plaintiffs,

vs.

NEWLAND INTERNATIONAL PROPERTIES
CORP., ROGER KHAFIF, THE TRUMP
ORGANIZATION, and DONALD TRUMP,

        Defendants.
_____/

### DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS THE AMENDED COMPLAINT & INCORPORATED MEMORANDUM OF LAW

Defendants, Roger Khafif, The Trump Organization and Donald Trump, (collectively, "Defendants"), hereby file this Reply in Support of Motion to Dismiss.

### INTRODUCTION

Plaintiffs' attempt to avoid the mandatory forum selection clause in their Purchase Agreements with Newland must fail. Plaintiffs' Response to Defendants' Motion to Dismiss (the "Response") does nothing to avoid the inevitable conclusion that this case is immutably Panamanian, and as such, should be tried in a Panamanian court. The suit involves claims brought predominantly by Panamanian corporations concerning condominium units (1) that are located in Panama; (2) on property owned by a Panamanian entity; (3) in a development managed by Panamanian individuals; (4) through purchase agreements governed by Panama law. Most importantly, Plaintiffs contractually agreed that any dispute that they later had concerning their Purchase Agreements would be litigated in Panama under Panama law. Instead, Plaintiffs filed this action before this Court in direct violation of their contractual agreement with Newland.

Now, after Defendants asked this Court to enforce the mandatory forum selection clause and dismiss this case for improper venue, Plaintiffs have raised various make-weight arguments against enforcement of their Purchase Agreements. However, the reasons Plaintiffs set forth in their Response against enforcement of the forum selection clause are insufficient under applicable

law and, thus, for the reasons set forth in Defendants Motion to Dismiss and below, this case should be dismissed against Defendants.

Interestingly, on many of the issues raised in Defendants' Motion to Dismiss, Plaintiffs either agree that the Complaint is faulty and requires amending or seek to downplay the issues as being "non-issues" without much explanation. Notwithstanding the rhetorical acrobatics that Plaintiffs exhibit in their Response, the fact remains that Plaintiffs' Amended Complaint, must be dismissed because venue is improper in Florida and Plaintiffs fail to state causes of action as a matter of law.

## ARGUMENT

I. **Plaintiffs Have Not Made a Strong Showing that Enforcement of the Forum Selection Clause Would be Unreasonable Under the Circumstances.**

A "forum [selection] clause should control absent a 'strong showing' that it should be set aside." *See M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972) (discussing "compelling reasons" forum selection clauses should be given full effect). Plaintiffs, as the parties opposing enforcement of the forum selection clause, bear the heavy burden of showing that the contractual forum (Panama) should not be honored. *P&S Bus. Machs., Inc.*, 331 F. 3d at 807 (11th Cir. 2003) ("The burden is on the party opposing the enforcement of the forum selection clause to show that the contractual forum is sufficiently inconvenient to justify retention of the dispute."). Here, Plaintiffs argue that enforcement of the forum selection clause would be unreasonable because (1) Panama courts are fundamentally unfair and corrupt; (2) the anti-waiver provisions of RICO and ILSA prohibit enforcement of the forum selection; and (3) it would deprive them of a RICO, securities fraud, and ILSA remedy. These purported reasons are insufficient for Plaintiffs' to meet their burden and make a "strong showing" that the forum selection clause should be set aside.

A. **A Panamanian forum is not fundamentally unfair or corrupt.**

As grounds for alleging that the forum selection clause should be disregarded, Plaintiffs argue that the Panamanian courts are notoriously corrupt and susceptible to being manipulated. Response at 2-4. The court should assume, however, until presented with evidence to the contrary, that the foreign form is adequate. *Leon v. Million Air*, 251 F.3d 1305, 1312 (11th Cir. 2001). Here, the evidence presented by Plaintiffs is insufficient to establish their allegations of corruption in Panama.

Among the "evidence" submitted by Plaintiffs is a declaration of Miguel Antonio Bernal ("Bernal Decl.") proclaiming that in his opinion, "much corruption exists within the judicial

2

system" and that "corruption has become worse in the last five years." Bernal Dec. ¶ 5. The Bernal Declaration should also be afforded little, if any, weight. Mr. Bernal offers only vague generalities about the alleged corruption of the Panamanian judicial system. As to the few specifics in his declaration, Mr. Bernal indicates that the Panamanian system took appropriate action against a judge that was allegedly selling pardons. The other events described in his declaration lack context, time frames, and fail to describe the nature of any of the purported complaints regarding the alleged corruption. *Id.* Moreover, his opinion that the judiciary has become worse in the last five years is unsubstantiated and his opinion that Plaintiffs would not receive a fair trial in Panama appears only to be based on his familiarity with alleged corruption regarding two judges, one of whom has already been removed. *Id.* Plaintiffs' declaration fails to state that there is a judicial crisis in Panama so severe that Panamanian attorneys, judges and courts are unable to resolve matters involving a real estate project located in Panama in a fair manner.

In any event, the opinions of Mr. Bernal must be tempered by the opinions of Defendants' Panamanian legal expert. Specifically, Ms. Beatriz Lorena Romera disputes that justice in Panama is defined by corruption. Romera Decl. ¶ 5, attached hereto as Exhibit A. Contrary to Plaintiffs' contention that judges are corrupt and dispense of justice through bribery, Ms. Romera describes various mechanisms that insure the suitability and independence and fairness of judges. *Id.*

In further support of their charges of corruption in the Panamanian courts, Plaintiffs submitted news articles collected from an internet Google search. *See* Response, Exhibit "A." Not only are these articles inadmissible hearsay, but this Court has no context in which to evaluate their credibility. First, many of the articles are outdated and based on events that occurred in 2005 and 2006. *Id.* Moreover, at least one of the articles cited by Plaintiffs mentions that corruption in Panama is suspect as "other critics either denied that there was a problem [], [and] noted that there is also corruption in the United States." *Id*. In, the face of similar arguments with respect to another foreign court, the Second Circuit held that "[i]t is not the business of our courts to assume the responsibility for supervising the integrity of the judicial system of another sovereign nation." *Blanco v. Banco Indus. de Venezuela, S.A.*, 997 F.2d 974, 981-82 (2d Cir. 1993) (refusing, despite charges of corruption, to find Venezuelan courts an inadequate forum where parties' contract contained a forum selection clause naming Venezuela as the parties' forum of choice). Finally, even derogatory articles, like the ones submitted by Plaintiffs, are insufficient to prove corruption so as to render a foreign forum inadequate. *See Gonzales v. P.T. Pelangi Niagra Mitra Int'l, P.T.*, 196 F. Supp. 2d 482, 487-491 (S.D. Tex. 2002) (allegations of corruption contained in newspaper

articles, statements by prominent Indonesian politicians, a survey conducted by the Partnership for Governance Reform in Indonesia, a World Bank report, and various U.S. Government bulletins fail to render Indonesia an inadequate forum); *Stalinski v. Bakoczy*, 41 F. Supp. 2d 755, 760-61 (S.D. Ohio 1998) (finding broad accusations of corruption in Honduras, supported by State Department reports, insufficient to render Honduras an inadequate forum).

Finally, Plaintiffs' arguments regarding corruption in Panama must also be tempered against recent decisions by this court transferring actions to Panama in light of a contract's forum selection clause. *See, e.g., Cantley v. Ducharme*, 2011 WL 611923 (S.D. Fla. 2011); *Gonzalez v. Watermark Realty Inc.*, 2010 WL 1299740 (S.D. Fla. 2010) (enforcing forum selection clause providing for application of Panama law and jurisdiction in Panama). Plaintiffs failed to provide specific, concrete evidence of judicial corruption affecting them and thus cannot establish that the forum selection clause cannot be enforced.

**B.     There is no strong public policy of this forum that would be contravened by this Court's enforcement of the mandatory forum selection clause.**

Next, Plaintiffs argue that the anti-waiver provisions of RICO and ILSA, as a public policy, bar this Court from enforcing the mandatory forum selection clause in the Purchase Agreements. However, as set forth in Defendants' Motion and as conceded by Plaintiffs in their Response, this **same argument was rejected** by the Eleventh Circuit in *Lipcon* when the Court held that choice clauses in international agreements, like the choice of law provision and forum selection clause in the Purchase Agreements at issue, are enforceable and not contrary to public policy even when it "may operate 'in tandem' as a prospective waiver of the statutory remedies for securities violations," *Lipcon*, 148 F.3d at 1287, 1298; . *Liles v. Ginn-La West End, Ltd.,* 2011 WL 284500, *7 (11th Cir. 2011) ("…*Lipcon* appears to instruct that Defendants may well have been able to lawfully obtain a prospective waiver of all rights under ILSA through choice of forum and law clauses.").

Plaintiffs attempt to distinguish *Lipcon* and *Liles* by mistakenly asserting that that the Purchase Agreements are not truly international agreements. Response at 5. Plaintiffs cannot honestly maintain that contracts that are **governed by Panama law** between **Panamanian citizens** and a **Panamanian entity** to purchase property located **in Panama** are domestic agreements. The only remote connection between these transactions and the United States is that The Trump Organization, an "American Defendant," licensed the use of its name to the Developer and a meeting was allegedly held in Palm Beach that, accordingly to the complaint and the exhibits attached thereto, occurred **after** the purchasers entered their purchase agreements with Panamanian

4

Developer, Newland. Although Plaintiffs argue that Roger Khafif, the president of Newland, is also an "American Defendant," which he is not,[1] who set up a "corporate shell" to sell the units, **these allegations are not plead in the Amended Complaint** and are **completely unsubstantiated** and thus should not be considered by this Court in its consideration of the application of the forum selection clause. Here, the transactions at issue are even more international than in *Liles*[2] which involved American plaintiffs and a Bahamian entity.

### C. A Panamanian forum would not deprive Plaintiffs of a remedy.

Finally, Plaintiffs have not made a "strong showing" as required under *Bremen* that Panama law is so fundamentally unfair that they would be completely deprived of a remedy if the action proceeded in Panama.[3] Response at 8-9.

Although Plaintiffs maintain that they would be deprived of an ILSA, RICO, or securities remedy under Panama law, that is not enough to make Panama an unfair forum for these Plaintiffs. An overwhelming number of cases have held that dismissal is appropriate in favor of a foreign judicial system even where a plaintiffs remedies and/or recovery is substantially limited by the law of the alternative forum. *Transunion Corp v. PepsiCo., Inc.*, 811 F.2d 127, 129 (2d Cir. 1987) (finding Philippines to be an available forum despite lack of RICO statute and treble damages); *Complaint of Maratina Argua, S.A.*, 823 F. Supp. 143, 149-50 (S.D.N.Y. 1993) (noting that the lack of joint and several liability, even if it might lead to lesser recovery, does not preclude dismissal); *Alcoa S.S. Co., Inc. v. M/V Nordi Regent*, 654 F.2d 147, 159 (2d Cir. 1980) (en banc) (dismissing in

---

[1] Defendant Khafif only owns a vacation home in Florida and is not a United States citizen nor is he domiciled in the United States. Plaintiffs attached a return of service as Exhibit "E" to the Response as evidence for his citizenship. The return of service merely shows that Defendant Khafif was served in Sunny Isles Beach, FL.

[2] Plaintiffs argue that *Liles* is also distinguishable because, there, the plaintiffs did not argue that the purchase agreements were truly domestic. Response at fn. 7. However, the Court clearly considered whether the purchase agreements in *Liles* were domestic transactions because the Eleventh Circuit found that the plaintiffs' arguments were not persuasive "in the context of an international agreement" and if the transaction was "a domestic transaction, Plaintiffs' arguments would be well taken." *Id.* at *7.

[3] Plaintiffs' contention that Panama is an unfair forum stems from their erroneous assumption that their claims are governed by the substantive laws of Florida, rather than Panama. Plaintiffs' Response neglects to respond to the choice of law arguments raised in Defendants' Motion. *See* Motion at 10-11. Plaintiffs are wrong to assume that their choice of a Florida forum brings along a choice of Florida substantive law. In other words, if Panama law does not permit Plaintiffs to recover under RICO, ILSA, or United States Securities laws, damages under these claims will not be recoverable even if this lawsuit remains in this Court. *Id.* Thus, Plaintiffs' argument concerning the unavailability of Panama as an alternative forum should be summarily rejected and those claims asserted in Counts II through V under the laws of the United States should be dismissed with prejudice.

favor of Trinidad even though plaintiff could only recover $570,000 in Trinidad as opposed to $8 million in the United States); *Piper*, 454 U.S. at 250, 247-55 (dismissal appropriate even if plaintiffs would not be able to rely on theory of strict liability and even if their potential damage award would be less than that which they would recover in the U.S.).

The same result should issue here. The mere fact that Panama law may be "less favorable to the plaintiffs' chance of recovery is not conclusive." *Banco Latino v. Lopez*, 17 F. Supp.2d 1327, 1332 (S.D. Fla. 1998). What is conclusive is whether the alternative forum permits litigation of the subject matter of the dispute. *DiRienzo v. Philip Servs. Corp.*, 232 F.3d 49, 57-58 (2d Cir. 2000). The fundamental fairness exception only applies "where the nature of the other forum's law which the clause would require to be applied would necessarily preclude recovery for the plaintiff." *Fred Lurie Assocs.*, 453 F. Supp. 2d at 1355 (citations omitted). United States Supreme Court precedent requires only that the foreign forum offer **some remedy** to address the alleged wrong. *See Piper*, 454 U.S. at 254, 255, n.22 (forum inadequate only when it provides "no remedy at all").

In spite of the requirements by the *Piper* Court, Plaintiffs' Response is devoid of any mention that the forum selection clause should not be applied because Panama provides "**no remedy at all.**" *See* Response at 8-9. This is because Panama law does provide Plaintiffs with remedies. The remedies may be different in Panama than some remedies available in the United States, but having different remedies is not the same as having no remedy. Here, the alleged wrong is Defendants' purported fraudulent misrepresentations concerning the purchase agreements at issue and Panama law recognizes a cause of action in fraud and authorizes the recovery of damages. *See* Romera Decl. ¶¶3-4. Moreover, this court already determined that these types of claims could also be brought in Panama against individuals not a party to a contract. *See Cantley v. Ducharme*, 2011 WL 611623, *6 (S.D. Fla. 2011) ("the Court is satisfied that Panama law would not completely deprive the [plaintiffs' of a chance to recover their alleged damages in this case". . . .and noting that "the defendants' expert on Panama law. . . .Jose Andres Troyano Pena, a former judge of Panama's Supreme Court. . . .[found]. . . .that a cause of action can be brought [under Article 1644] against individuals who, within the course of soliciting and negotiating a contract on a corporation's behalf, without being part of the contract, make false representation with the intent to induce a party to enter into a contract with the corporation, if harm is caused to the party induced to enter into said contract, due to the willful conduct or negligence of an individual inducing the harmed party to enter into said contract.").

Because Panama allows for the subject matter of this case to be litigated in its courts, the

6

mere fact that Plaintiffs may be precluded from pursuing additional remedies under ILSA, RICO, or the United States' securities laws is not enough to render Panama law an inadequate forum.

### II.     Plaintiffs' Claims for Control Person Liability Should be Dismissed.

In Count II, Plaintiffs attempt to allege controlling person liability against Defendants under 15 U.S.C. § 77o. Am. Compl. ¶ 82.  In their Response, Plaintiffs concede that Count II, as plead, is barred by the statute of limitations.  To avoid the statute of limitations, Plaintiffs seek to amend their complaint to state that the "delivery of the final constructed unit and not merely the purchase agreements" constitutes the unregistered "investment contracts."  Response at 9.  Even if Plaintiffs were permitted to amend to include this allegation in their claim for control personal liability under 15 U.S.C. § 77o, the Court would still have to dismiss the claim because such an allegation would not demonstrate the transactions at issue were "investment contracts."  The Supreme Court defined the term "investment contract" to include any "contract, transaction or scheme whereby a person invests his money in a common enterprise and is led to expect profits **solely from the efforts of the promoter or a third party.**" *SEC v. W.J. Howey, Co.*, 328 U.S. 293, 298-99, 66 S.Ct. 1100, 1103, 90 L.Ed. 1244 (1946). Here, there are no allegations, nor can Plaintiffs allege based on the plain language of the purchase agreements, that the purchase agreements provided to purchasers emphasized the investment value of the units or that they were expecting profits from the units based "solely from the efforts of the promoter or a third party."  *Id.* at 298-99; *Rice v. Branigar Org., Inc.*, 922 F.2d 788, 790-91 (11th Cir.1991).  If anything, at best, to the extent that Plaintiffs maintain that they were expecting profits from the future resale of their units, federal securities laws are not implicated because, as recognized in *Bender v. Cont'l Towers Ltd. P'ship*, and *Garcia v. Santa Maria Resort, Inc.*, such a purchaser is "drawn in by an expectation of appreciation in value" rather than an expectation of profits "solely from the efforts of a promoter or a third party." *Id.* Accordingly, Plaintiffs' claims in Count II should be dismissed.

### III.    Plaintiffs' RICO Claims Should Be Dismissed.

#### A.     Plaintiffs' Reply concedes that they failed to plead sufficient facts to establish RICO's extraterritorial application.

In their Response, Plaintiffs seek to amend their Amended Complaint to state that a meeting occurred between Plaintiff Landau and Defendant Khafif in Miami, Florida and thus conduct material to the racketeering occurred in the United States.  *See* Response at 12.  This concession is enough for this Court to dismiss Plaintiffs' RICO claims.  However, even if Plaintiffs were to amend their RICO claim to include an allegation that a meeting was held in Miami between

Plaintiff Landau and Defendant Khafif, Plaintiffs would still be required to plead specific facts related to that meeting for this Court to assess whether conduct material to the completion of the purported racketeering occurred in the United States. *Liquidation Com'n of Banco International, S.A. v. Renta*, 530 F.3d 1339 (11th Cir. 2008) ("Mere preparatory activities, and conduct far removed from the consummation of the fraud, will not suffice to establish jurisdiction").

### B. Plaintiffs' RICO Claims also fail to plead other sufficient facts to sustain dismissal.

Next, Plaintiffs argue that, in spite of their failure to plead facts sufficient to establish that RICO should have an extraterritorial application in this action, this Court should not dismiss the action because Plaintiffs have plead facts sufficient to support a RICO claim. A private civil RICO action must allege and prove that: (1) that the Defendants (2) through the commission of two or more acts (3) constituting a "pattern" (4) "of racketeering activity" (5) directly or indirectly invested in [§ 1962(a)], or maintains [or acquires] an interest in [§ 1962(a), (b)], or participates [or conducts the affairs of, § 1962(c)] (6) an "enterprise" (7) the activities of which affect intrastate or foreign commerce [and (8) that the Plaintiff]. . . was "injured in his business or property by reason of a violation of §1962." *Moss v. Morgan Stanley, Inc.*, 719 F.2d 5, 17 (2d Cir. 1983), *cert. denied*, 465 U.S. 1025 (1984). As the support for their RICO claim, Plaintiffs' Response references a "promotional brochure," which Plaintiffs failed to attach to the Amended Complaint, and references a single meeting in Palm Beach County, which occurred **after** the initial purchase contracts were signed. These allegations falls far short of the pleading standards for a RICO claim. *Id.*; *Reves v. Ernst & Young*, 507 U.S. 170, 183 (1993). General allegations of fraud, like those that exist in the Amended Complaint, that fail to specify statements made by **each Defendant**, **when** the statements were made, **where** each statement was made, and **how** each particular Defendant invested, maintained or acquired an interest in, or conducted the affairs of an enterprise, fails to state a cause of action as a matter of law and, as such, dismissal is appropriate. *Id.*

### C. Plaintiffs' fail to sufficiently plead facts demonstrating an enterprise.

Plaintiffs' Response incorrectly asserts that the allegation that "the enterprise arguably was and is Newland International, alternatively, the four defendants constitute the enterprise" is sufficient to plead an "enterprise" under RICO. *See* Response at 12-13. Rather, Plaintiffs must allege specific facts establishing the existence of an "enterprise." *See United States v. Turkette*, 452 U.S. 576 (1981). To plead a viable RICO enterprise, the plaintiff must allege: (1) "an ongoing organization, formal or informal;" (2) that "the various associates function as a continuing unit;"

8

and (3) "an entity separate and apart from the pattern of activity in which it engages." *Id.* at 583. In effect, the enterprise "must have a structure and goals separate from the predicate acts alleged." *Ageloff v. Kiley*, 318 F.Supp.2d 1157, 1159 (S.D. Fla. 2004). A RICO plaintiff must plead specific facts, not mere conclusions, which establish the existence of an enterprise. *Elliot v. Foufas*, 867 F.2d 877, 881 (5th Cir. 1989); *Gellert v. Richardson*, 1996 WL 107550 at *4 (M.D. Fla. Jan. 26, 1996) ("Besides lumping these Defendants together and using the terms conspiracy and enterprise, Plaintiff has not indicated how these Defendants form an enterprise") *aff'd*, 124 F.3d 1329 (11th Cir. 1997). The Amended Complaint here does not advance any enterprise theory whatsoever. Rather, Plaintiffs admit that they are unaware of, and certainly have not plead, the RICO enterprise when they claim that "discovery will reveal the exact nature" of the RICO enterprise and pleading it at this junction is "premature." Response at 11-12.

Not only are Plaintiffs' allegations vague, but they fail to establish an "enterprise" because pleading that "Newland International" or "alternatively, the four defendants" is not sufficiently distinct from the Defendants alleged to have engaged in the racketeering activity for purposes of the RICO Act. *See U.S. v. Goldin Indus.*, 219 F.3d 1268 (11th Cir. 2000) (recognizing rule that a RICO defendant must be distinct from the alleged enterprise). Thus, Plaintiffs have thus not alleged a proper enterprise under RICO.

### D.     Plaintiffs Fail to Adequately Plead an Investment Injury.

Plaintiffs rely on a single vague allegation that Defendants invested unidentified income "directly from the pattern of racketeering activity and used the income or its proceeds to operate the enterprise." Response at 13. No facts are plead in support, much less enough facts to state a claim to relief that is plausible on its face and thus Plaintiffs' § 1962(a) claim should be dismissed.

### IV.    Count V Should Be Dismissed Because the ILSA Claim is Time Barred as to the Twenty-Three Purchase Agreements Signed Before November 12, 2008.

Plaintiffs contend that only seventeen, and not twenty-three of the Purchase Agreements, are subject to two year statute of limitations with regard to property reports under ILSA. Response at 14. Plaintiffs, however, failed to attach several Purchase Agreements to their Initial and Amended Complaint and, as set forth in footnote 2 and pages 14 and 15 of Defendants' Motion, several of those Purchase Agreements, together with the ones that were attached to Plaintiffs' complaint, evidence that twenty-three of the Purchase Agreements are subject to the statute of limitations and thus those claims are time-barred as a matter of law if ILSA even applied to the transactions at issue.

## V.   Count IV should be dismissed under §1703(a)(2)(B).

Plaintiffs now seek to amend Count IV to allege a claim under §1703(a)(2)(B) instead of §1703(a)(1)(C), and thus, Count IV as plead must be dismissed. Moreover, as plead, Plaintiffs' allegations in Count IV cannot state a claim under § 1703(a)(2)(B). To the extent this court is inclined to consider the sufficiency of Plaintiffs' allegations in Count IV as a § 1703(a)(2)(B) claim, the allegations incorporated into Count IV are insufficient to meet the Rule 9(b) requirements. *See, e.g., Degirmenci v. Sapphire-Fort Lauderdale, LLLP*, 642 F. Supp. 2d 1344, 1351-52 (S.D. Fla. 2009) (Dimitrouleas, J.) (finding that the complaint lacked the requisite level of particularity to satisfy Rule 9(b) and dismised claims under ILSA §1703(a)(2)(A)-(C) for failing to plead fraud with particularity). Here, like in *Degirmenci*, the Complaint does not indicate precisely what statements were made, who made them, the contents of the statements, and what Defendants obtained as a result. *Id.* Moreover, to the extent that Plaintiffs' allegations of fraud are grounded on Defendants' purported representations that they would "provide financing for the remaining 70%" of the purchase price, the plain language of the Purchase Agreements expressly negates Plaintiffs' assertion and, accordingly, Plaintiffs cannot establish reasonable reliance to state a claim under § 1703(a)(2)(B). *See* Purchase Agreements, ¶6(a)(iv) ("PROMISSOR BUYER's obligations hereunder are not conditional upon his/her ability to obtain credit or financing.").

## VI.   Plaintiffs' ILSA claims should be dismissed as to Donald Trump and The Trump Organization.

Finally, in their Response, Plaintiffs argue that Donald Trump and The Trump Organization are "agents" under ILSA because an agent is "any person who represents or acts for or on behalf of a developer **in selling or leasing**, or offering to sell or lease, any lot or lots in a subdivision." However, the Amended Complaint is completely devoid of any allegations stating that Donald Trump or The Trump Organization were representing Newland "in selling or leasing" any units at Trump Ocean Club. Thus, Plaintiffs have failed to state an ILSA claim against Donald Trump and The Trump Organization and Counts IV and V should be independently dismissed as to them.

WHEREFORE, Defendants respectfully request that this Court dismiss Plaintiffs' Amended Complaint with prejudice, due to the forum selection clause, and dismiss all claims for failing to state a claim, and grant such other and further relief as this Court deems just and proper.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on June 6, 2011, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following: Roderick F. Coleman, Esq. Coleman & Associate, P.A., 400 S. Dixie Highway, Suite 121, Boca Raton, FL 33432.

| | |
|---|---|
| Herman J. Russomanno, Esq.<br>Robert J. Borrello, Esq.<br>Herman J. Russomanno III, Esq.<br>RUSSOMANNO & BORRELLO, P.A.<br>Museum Tower – Penthouse 2800<br>150 West Flagler Street<br>Miami, Florida 33130<br>Telephone: (305) 373-2101<br>Facsimile: (305) 373-2103<br><br>*Co-Counsel for Defendants Donald Trump and The Trump Organization* | GREENBERG TRAURIG, PA<br>777 South Flagler Drive, Suite 300E<br>West Palm Beach, FL 33401<br>Telephone: (561) 650-7900<br>Facsimile: (561)655-6222<br><br>By: /s/ Andrea Shwayri<br>    Mark F. Bideau, Esq.<br>    bideaum@gtlaw.com<br>    Florida Bar No. 564044<br>    Andrea Shwayri, Esq.<br>    shwayria@gtlaw.com<br>    Florida Bar. No. 0051566<br><br>*Counsel for Defendants Roger Khafif, Donald Trump, and The Trump Organization* |

*382,552,181v2/WPB/999903.000016*